(No. 55589.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ROBIN WAYNE OWENS, Appellant.

*Opinion filed April 4, 1984.—Rehearing denied June 4, 1984.*

SIMON, J., concurring in part and dissenting in part.

Daniel D. Yuhas, Deputy Defender, and Lawrence Bapst and James G. Woodward, Assistant Defenders, of the Office of the State Appellate Defender, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Michael B. Weinstein, Kenneth A. Fedinets, and James E. Fitzgerald, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

In an indictment returned in the circuit court of Kankakee County, defendant, Robin Wayne Owens, and Anthony Hite were charged with one count each of murder (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(1)), armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2(a)), and theft (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(d)). Following a jury trial defendant was found guilty of murder and armed robbery. In a death penalty hearing requested by the People, the jury found that one or more of the factors set forth in section 9—1(d) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(d)) existed and found that there were no mitigating factors sufficient to preclude a sentence of death. Defendant was sentenced to death, and the sentence was stayed (87 Ill. 2d R. 609(a)) pending direct appeal to this court (Ill. Const.

1970, art. VI, sec. 4(b); 87 Ill. 2d R. 603).

Anthony Hite, the codefendant, pleaded guilty to a reduced charge of robbery and testified for the People. He stated that intending to rob her, he and defendant went to the house of Arfrazia Hodges, a woman they both knew. They were admitted into the house by Lacey Felix, a friend of Arfrazia Hodges. Felix left shortly thereafter and defendant, Anthony Hite and Arfrazia Hodges watched television for a while. At some point, while Ms. Hodges was in the bedroom, defendant entered the bedroom and told her to "give up the money." He then struck her in the face with his fist. She responded, "You ain't got to do this, all you had to do was ask for it." She then told him that the money was under the dresser. He found the money and asked her where the rest of it was. She then took more money from her bra and gave it to defendant. Defendant then went from the bedroom into the kitchen, and returned to the bedroom with a hammer and knife. He struck her in the head several times with the hammer. Ms. Hodges died as the result of the blows to the head.

Defendant's confessions contain a similar account of the occurrence except that defendant stated that after he demanded the money, the victim grabbed a knife which was lying on the dresser in the bedroom. Defendant then grabbed a hammer, which was also lying on the dresser, and struck her in the head with it two or three times.

Defendant contends first that the circuit court erred in denying his pretrial motions to suppress his confessions. Defendant stated in the motions and contends here that the confessions were obtained in violation of his fifth amendment right to remain silent and his sixth amendment right to counsel. He points out that at the time of his arrest a formal complaint had been issued charging defendant with murder in Will County, and as-

serts that assuming, *arguendo*, that the circuit court was correct in holding there was no violation of his fifth amendment rights, the confessions were the product of a violation of his sixth amendment right to counsel.

The testimony shows that on December 19, 1980, Kankakee police officers arrested defendant based upon information from the Joliet police department that a warrant had been issued in Will County for his arrest on a charge of murder. Citing *Spano v. New York* (1959), 360 U.S. 315, 3 L. Ed. 2d 1265, 79 S. Ct. 1202, defendant argues that the right to counsel when being questioned in the course of an investigation into an unsolved crime differs from the right which attaches while in custody upon a formal charge. Relying on *Massiah v. United States* (1964), 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199, he argues that adversarial proceedings commence at the point at which judicial criminal proceedings are initiated by way of a formal charge, that once such adversarial judicial proceedings have commenced against an individual, government efforts to elicit incriminating information violate his sixth amendment right to counsel.

The testimony at the hearing on defendant's motions to suppress his confessions shows that, after refusing to talk to Kankakee police officers for a period of several days, he was interviewed by officers from the Joliet police department. Following his conversations with the Joliet police officers, defendant confessed to a murder in Joliet and thereafter to the murder of Arfrazia Hodges. He was convicted of the murder of George Kallai in Joliet, and a death sentence was imposed. This court affirmed the judgment and sentence. (See *People v. Owens* (1984), 102 Ill. 2d 88.) The same confessions which were admitted into evidence here were admitted in the trial in Will County and the testimony of the police officers in both cases was substantially the same. The issues raised

and argued by defendant here were considered and decided by this court in docket No. 56453 (102 Ill. 2d 88, 101-07). In *People v. Williams* (1975), 59 Ill. 2d 557, a statement made by defendant was relevant to two separate charges, one for a burglary and robbery, and the other for burglary and armed robbery. A motion to suppress the statement was sustained. The State did not appeal from the order of suppression and dismissed the indictment. In the case of the second indictment, defendant moved to suppress the same statement but the motion was denied and the defendant was convicted. This court held that the ruling in the first case "determined the question which was common to the prosecutions under both indictments, and the State was precluded from litigating the question a second time." 59 Ill. 2d 557, 563.

In *People v. Hopkins* (1978), 52 Ill. 2d 1, defendant was charged with two separate instances, one of attempted rape and one of robbery and attempted rape. A knife had been obtained as the result of a search of the defendant upon his arrest, and, in the first trial involving one of the charges, the validity of the arrest and search had been contested and upheld. In the trial on the second charge the circuit court denied the motion to suppress solely on the ground that defendant had already had a hearing on the motion. This court affirmed the holding of the circuit court on the ground that collateral estoppel applied.

There is no contention made here that there is any change of circumstances or any additional evidence which distinguishes this case from the earlier case. The question of the admissibility of the confessions was fully litigated in both cases and the holding of the circuit court of Will County has been affirmed. Under the circumstances, the doctrine of collateral estoppel is applicable and we need not further consider defendant's contentions with regard to the admissibility of the statements

and the denial of defendant's various motions to suppress them.

Next, defendant contends that his sentence must be vacated because it was imposed by a jury which was selected in violation of the principles established in *Witherspoon v. Illinois* (1968), 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770. The court in *Witherspoon* held that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction and said:

> "Unless a venireman states unambiguously that he would automatically vote against the imposition of capital punishment no matter what the trial might reveal, it simply cannot be assumed that that is his position." (391 U.S. 510, 516 n.9, 20 L. Ed. 2d 776, 781-82 n.9, 88 S. Ct. 1770, 1774 n.9.)

Defendant contends that, in violation of the standard set forth in *Witherspoon*, one juror was improperly excused during *voir dire*. The following colloquy, in pertinent part, occurred:

> "Q. The State is requesting that the jury consider the death penalty in this particular case. Do you belong to any organizations, church group, or any society that has taken a position on the death penalty?
>
> A. No I do not belong to any organization that has a position on the death penalty but my own belief is that it is not, one wrong, two wrongs don't make a right.
>
> * * *
>
> Q. Are you for any reason whether it is ethical, or religious, for any reason opposed to the imposition of the death penalty on a person convicted of the crime of murder?
>
> A. According to my own beliefs I don't think that the death penalty is, I don't think that it is a fair act, another act of violence.

Q. Are your feelings against the death penalty such that regardless of the evidence in this case you could not vote for a verdict sentencing this defendant to death?

A. No they are not, not if, not if, if the evidence weighs him guilty then if this, if the evidence weighs him guilty with a shadow of a doubt then he is guilty if in my mind if the evidence —

Q. Okay, that is whether he is guilty or not guilty. Right?

A. Yeah.

Q. Do you feel so strongly against the death penalty that regardless of what the evidence shows that you would not vote for a verdict sentencing the defendant to death?

A. Oh boy. That is a good one. If, if the death penalty is the only, that is the only, that is what the state is asking for the death penalty?

Q. Yes.

A. And if he is guilty—

Q. Then the jury proceeds in a second stage—let's for a moment assume the jury finds the defendant guilty of murder. And in part two the jury has to decide certain factors exist. If the jury decides the defendant is guilty of murder, that these certain factors exist, then the jury goes on to part three: and decides whether or not they should give the defendant the death penalty. And the question is regardless of what the evidence shows are your feelings such that you could not vote for death?

A. No.

Q. No. No meaning that your feelings aren't that strong or no there is no way you could vote for death?

A. Right.

Q. You could never vote for the death penalty?

A. Well never say never, but—

Q. At this point—

A. At this point I mean if there is another, if he could spend a hundred thousand years in jail or whatever but I don't, I am opposed to the death penalty.''

It appears that the ambiguity created in this exchange was in part caused by the questions posed by the court. The

People correctly note that the circuit court is in a superior position to ascertain the meaning the venireman intends to convey. The focus should not be on single questions and the answers thereto but to the *voir dire* as a whole. (*People v. Gaines* (1981), 88 Ill. 2d 342, *cert. denied* (1982), 456 U.S. 959, 72 L. Ed. 2d 482, 102 S. Ct. 2034.) Our examination of the colloquy persuades us that the standards of *Witherspoon* were met. While the prospective juror had problems expressing herself, we are persuaded that she would have voted against the imposition of death no matter what the evidence might have revealed so long as some other sentence could be imposed. We conclude that the circuit court did not err in excusing the juror.

Defendant contends next that the circuit court erred in refusing to instruct the jury on the lesser included offense of robbery. Defendant points out that Anthony Hite's testimony shows that when defendant demanded money from the victim he did not have the hammer and that the jury could have believed that defendant intended to rob the victim and used the hammer only to prevent her from stabbing him. The Criminal Code of 1961 provides:

"Robbery. (a) A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force." Ill. Rev. Stat. 1979, ch. 38, par. 18—1(a).

"Armed robbery. (a) A person commits armed robbery when he or she violates Section 18—1 while he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon." Ill. Rev. Stat. 1979, ch. 38, par. 18—2(a).

The statute requires only that the weapon be carried "on or about" the person of the perpetrator without regard to its use or the stage of the occurrence of its acquisition. The circuit court did not err in refusing to instruct the jury on the offense of robbery.

Defendant contends next that the circuit court erred

when it refused to permit defense counsel to cross-examine Officer Duval regarding his prior acquaintance with the victim. On direct examination of Officer Duval the following ensued:

"WITNESS: We went into a north bedroom and there we found a body of a female.

*** 

PROSECUTOR: And did you know her?
WITNESS: Yes.
PROSECUTOR: Who was she?
WITNESS: Arfrazia Hodges."

It is defendant's contention that the manner in which the identification of the victim was elicited evoked an improper inference. He argues that it was important to clarify this relationship to prevent the jury from speculating that the police officer and the victim were social acquaintances, when in fact the victim was a known drug dealer.

The extent of permissible cross-examination rests in the sound discretion of the circuit court. Under the circumstances shown here, assuming, *arguendo*, that the court erred in restricting the cross-examination, we hold it to be harmless.

Defendant contends next that he was denied a fair trial when the State's Attorney, during his direct examination of a Joliet police officer, repeatedly referred to pending Joliet cases. The following colloquy occurred:

"WITNESS: After giving him his rights and talking to him about the matter at hand he had first indicated no knowledge of what we were talking about.

PROSECUTOR: The matter at hand, we are talking about the Kankakee case is that correct—okay do you understand that the matter at hand here is the Kankakee case?

WITNESS: Yes, sir."

There were then two more references to "the matter at hand." Defendant contends that, by asking the officer to

limit his testimony to "the matter at hand," the prosecutor improperly injected evidence of pending criminal cases against the defendant. A similar contention was considered in *People v. Butler* (1974), 58 Ill. 2d 45. In *Butler*, the prosecutor posed questions whose only apparent purpose was to demonstrate to the jury that the defendant was of bad moral character. The court held that, although these questions were clearly improper and defendant's objections should have been sustained, the error did not require a new trial. Here, the alleged reference to other crimes was far less flagrant than in the questioning in *Butler* and any error was harmless beyond a reasonable doubt.

Next, defendant contends that the court erred in allowing his request to be absent from the courtroom during a portion of the hearing in which evidence of aggravating and mitigating factors was presented. Defendant was present in the courtroom for all of the proceedings through the conclusion of the State's evidence in aggravation. At that time, defense counsel initiated the following colloquy:

"MR. REAGAN [Defense Counsel]: Your Honor, Mr. Owens has requested that I file a motion before the Court that he be excused from attending any further proceedings in this matter. I advised him that I think he has the right to do that. I have advised him that I don't think it is a good idea.

THE COURT: *** I would request that you let me consider that over the lunch hour and I will have you back here at 1:30. ***"

When court reconvened after the noon recess, the court recounted the events occurring during the recess:

"The defendant had earlier this morning just immediately before the noon recess requested that his presence be waived for any further proceedings at least insofar as today is concerned and the Court said it would take the matter under advisement until after lunch, the Court has been advised by the Sheriff's office Mr. Owens has announced he is not returning to the court, that he has re-

moved his court clothing and he dressed himself in his jail fatigues, that he refuses to appear, he's further indicated to one of the deputies that he does not feel well and did not wish to be here. I will respect the Defendant's right not to be here. And having indicated it orally and having apparently indicated it by his actions therefore we will proceed with this phase of the proceedings without the defendant's presence. ***"

A basic right guaranteed by the confrontation clause of the sixth amendment to the United States Constitution is the accused's right to be present in the courtroom at every stage of his trial (*Illinois v. Allen* (1970), 397 U.S. 337, 25 L. Ed. 2d 353, 90 S. Ct. 1057) and it, like many other rights, may be waived by him. "Thus where a defendant voluntarily absents himself from a courtroom and refuses to be present for further proceedings he is deemed to have waived his right and cannot claim any advantage on account of his absence." (*People v. De Simone* (1956), 9 Ill. 2d 522, 533.) Under these circumstances, the circuit court was correct in concluding that defendant had voluntarily waived his right to be present during this portion of the proceedings.

Defendant's next contention is that the sentence of death must be vacated because the prosecutor's decision to seek capital punishment for defendant's role in the crime was an unconstitutional exercise of prosecutorial discretion, resulting in an unconscionable disparity between the treatment of defendant and his accomplice. Defendant relies primarily on *People v. Gleckler* (1980), 82 Ill. 2d 145, in which this court vacated the sentence of death and remanded for imposition of a lesser penalty. In *Gleckler*, the court expressly rejected the contention that Gleckler was more culpable than his accomplice and, in view of the evidence in mitigation presented by both men, that Gleckler's prospects for rehabilitation were not demonstrably poorer than those of his accomplice. Regarding the issue of proportion-

ality, the court found it relevant that Gleckler's accomplice, arguably more culpable and with less rehabilitative potential than Gleckler, had not received the death penalty. 82 Ill. 2d 145, 167.

This same issue was raised and decided in the recent case of *People v. Szabo* (1983), 94 Ill. 2d 327. We held that the imposition of the sentence of death on Szabo could not be deemed excessive or disproportionate solely because his accomplice received a lesser sentence. In the instant case, defendant in his taped interview conceded the disparity in the degree of culpability between himself and Anthony Hite:

> "OFFICER GERARD: Did Anthony Hite help you in this action against this woman?
> DEFENDANT: No.
> OFFICER GERARD: Did he suggest it to you?
> DEFENDANT: No. All he said was he knew where I could go and get some money. ***"

Anthony Hite testified that "it was planned that we just tie her up and leave. But see he went off into his own thing and, and you know, she wasn't supposed to get killed." The foregoing demonstrates the difference in the degree of culpability between defendant and Anthony Hite. The fact that Hite did not receive the death penalty for his part in the murder does not bar the imposition of the death penalty upon defendant.

We next consider defendant's contention that he should not have been sentenced to death because there existed a substantial factor in mitigation: he acted "under the compulsion of threat or menace of the imminent infliction of death or great bodily harm." (See Ill. Rev. Stat. 1979, ch. 38, par. 9—1(c)(4).) Although defendant concedes that proof of one mitigating factor by itself will not necessarily preclude imposition of the death sentence, he asserts that factor here overshadows all the evidence in aggravation. The evidence upon which defendant relies is his own confession

in which he stated that the victim came at him with a knife after he had asked her for the money, and the testimony of Officer Gerard that he thought if she had a knife she definitely would have been aggressive. The testimony of Anthony Hite, however, shows that defendant was the aggressor throughout the incident and that he had brought the knife and hammer into the bedroom. Further, among the aggravating factors, the jury was presented evidence of defendant's past criminality and delinquency which includes, *inter alia*, his confession to the murders of two Joliet men.

This court has noted the "profound importance" attached to the role of the trier of fact in weighing aggravating and mitigating factors. (*People v. Brownell* (1980), 79 Ill. 2d 508, 535.) The record supports the finding that defendant did not commit murder while "under the compulsion of threat or menace of the imminent infliction of death or great bodily harm" and we find no reason to disturb it.

Next, defendant contends that the death penalty statute is unconstitutional because it permits the consideration of undefined nonstatutory aggravating factors and thus violates the eighth amendment ban on arbitrary and capricious imposition of the death penalty. In support of his argument defendant cites *Henry v. Wainwright* (5th Cir. 1981), 661 F.2d 56, *vacated and remanded* (1982), 457 U.S. 1114, 73 L. Ed. 2d 1326, 102 S. Ct. 2922, *aff'd on remand* (5th Cir. 1982), 686 F.2d 311, *vacated and remanded* (1983), 463 U.S. 1223, 77 L. Ed. 2d 1407, 103 S. Ct. 3566. In *People v. Free* (1983), 94 Ill. 2d 378, 427, we distinguished the statute considered in that case. In any event, the Supreme Court has upheld a death sentence notwithstanding the consideration by the sentencing court of a nonstatutory aggravating factor. *Barclay v. Florida* (1983), 463 U.S. 939, 77 L. Ed. 2d 1134, 103 S. Ct. 3418.

We consider next defendant's contention that the circuit

court improperly admitted evidence of defendant's conduct as a juvenile. The Supreme Court has held that the focus should be on the record and character of the accused in determining whether death is the appropriate punishment in a given case. (*Lockett v. Ohio* (1978), 438 U.S. 586, 57 L. Ed. 2d 973, 98 S. Ct. 2954.) We are of the opinion that a defendant's prior delinquency adjudications are highly relevant in determining whether defendant's character is such that death is the appropriate punishment. Under *People v. Owens* (1984), 102 Ill. 2d 88, and our earlier decision in *People v. Wunnenberg* (1981), 85 Ill. 2d 188, 194, the court did not err in admitting the evidence.

Defendant next contends that the death penalty statute is unconstitutional in that it vests discretion in the prosecutor to request a death penalty hearing or not as he chooses, and that this constitutes an unconstitutional delegation of legislative and judicial authority resulting in the arbitrary imposition of the death penalty. This identical argument was first considered in *People ex rel. Carey v. Cousins* (1979), 77 Ill. 2d 531, wherein this court traced the history of the wide discretion enjoyed by the State's Attorney in both the initiation and the management of criminal litigation and determined that such discretion was not unconstitutional. *Cousins* has been subsequently reaffirmed (see, *e.g., People v. Lewis* (1981), 88 Ill. 2d 129), and we decline to reconsider it here.

Defendant has also argued that the death penalty statute fails to provide adequate comparative-review procedures to insure that the sentence is not imposed arbitrarily or disproportionately. We have considered and rejected this contention (*People v. Brownell* (1980), 79 Ill. 2d 508, 541-44) and likewise decline to reconsider it here. (See also *People v. Gaines* (1981), 88 Ill. 2d 342, 383.) In *Pulley v. Harris* (1984), 465 U.S. 37, 79 L. Ed. 2d 29, 104 S. Ct. 871, the Supreme Court imposed no requirement not met by our present method of review.

Defendant's final contention is that the failure of the death penalty statute to require that the State prove beyond a reasonable doubt the absence of mitigating factors sufficient to preclude the death penalty violates due process of law and the eighth amendment. The argument continues that, in order to insure the consistent and appropriate application of the death penalty, the People should have the burden of proving beyond a reasonable doubt that mitigating factors do not preclude the death sentence. *People v. Brownell* (1980), 79 Ill. 2d 508, disposed of this issue, stating that a unanimous jury or the court must weigh the mitigating factors against the aggravating factors and conclude that there are no mitigating factors sufficient to preclude the imposition of the death sentence. Our determination in *Brownell* has recently been reaffirmed in *People v. Free* (1983), 94 Ill. 2d 378, and we need not reconsider the issue.

For the reasons stated, the judgment of the circuit court of Kankakee County, including the sentence of death, is affirmed. The clerk is directed to enter an order setting Monday, the 17th day of September, 1984, as the date on which the sentence of death entered by the circuit court of Kankakee County shall be executed. The defendant shall be executed by a lethal injection, in the manner provided by section 119—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 119—5). A certified copy of this order shall be furnished by the clerk of this court to the Director of the Department of Corrections, to the warden at Stateville Correctional Center, and to the warden of the institution wherein the defendant is confined.

*Judgment affirmed.*

JUSTICE SIMON, concurring in part and dissenting in part:

I concur in the majority's affirmance of the guilty verdict, but I dissent from the imposition of the death penalty

because I believe that the Illinois death penalty statute is unconstitutional. As I explained in my dissents in *People v. Lewis* (1981), 88 Ill. 2d 129, 179 (Simon, J., dissenting), and *People v. Silagy* (1984), 101 Ill. 2d 147 (Simon, J., dissenting), when a substantial constitutional question is presented, the legal doctrine of *stare decisis* should not control the outcome. That is the case here. Four members of this court have stated that the outcome in *People ex rel. Carey v. Cousins* (1979), 77 Ill. 2d 531, is incorrect. (77 Ill. 2d 531, 544 (Ryan, J., dissenting, joined by Goldenhersh, C.J., and Clark, J.); *People v. Lewis* (1981), 88 Ill. 2d 129, 179 (Simon, J., dissenting).) I believe that a violation of the defendant's due process rights occurs when four justices of this court hold the opinion that the death penalty statute is unconstitutional, yet that penalty is imposed on the defendant because of adherence to an inapplicable legal doctrine.