(No. 59908.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DONALD R. LEGO, Appellant.

*Opinion filed February 20, 1987.—Rehearing*
*denied June 27, 1988.*

SIMON, J., dissenting.

Charles M. Schiedel, Deputy Defender, and Lawrence J. Essig and Robert E. Davison, Assistant Defenders, of the Office of the State Appellate Defender, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma J. Stewart, Solicitor General, and Mark L. Rotert and Jack Donatelli, Assistant Attorneys General, of Chi-

cago, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

In a four-count indictment returned in the circuit court of Will County, defendant, Donald Richard Lego, was charged with the murder of Mary Mae Johnson by stabbing and beating her (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(1)), and while committing the forcible felonies of burglary with intent to commit murder (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(3)), burglary with intent to commit theft (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(3)), and armed robbery (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(3)). Following a jury trial, verdicts were returned finding defendant guilty on all counts. Pursuant to section 9—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 9—1), at the request of the People, a death penalty hearing was held before the same jury. The jury unanimously found the existence of an aggravating factor set forth in section 9—1(b) (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b)), and found that there were no mitigating factors sufficient to preclude a sentence of death. Defendant was sentenced to death on all four counts of murder. The sentence was stayed (87 Ill. 2d R. 609(a)) pending appeal to this court (Ill. Const. 1970, art. VI, sec. 4(b); 87 Ill. 2d R. 603).

On August 25, 1983, Mary Mae Johnson, an 82-year-old widow, was found dead in her home in Joliet. She had been stabbed repeatedly and bludgeoned. A basement window and window well had been broken. Recovered at the victim's home were a white shirt similar to the one worn by defendant in a photograph taken earlier on the morning of the murder; a hand-rolled cigarette, cigarette filter, and a cigarette butt which, a forensic serologist stated, "evidenced" an O-type secreter, the same type as defendant; an envelope bearing defendant's

name and address and containing photographs of defendant's family. A forensic scientist testified that fingerprints found on the door knob, the photographs in the envelope, and on the hand-rolled cigarette, compared to defendant's. The victim's son testified that money which she kept in a bag in her upstairs closet was missing. There was testimony at trial that defendant had done roofing work for Mrs. Johnson some three or four years earlier, for which she paid him $2,000 to $5,000 in cash.

. Defendant contends first that the circuit court's denial of his motion to change venue based on extensive adverse pretrial media coverage deprived him of a trial by a fair and impartial jury. He contends that because three of the jurors admitted during *voir dire* to having heard about the case through the media, and because the trial court failed to mitigate the effects of this potentially prejudicial publicity, he did not receive a trial by an impartial jury free from outside influences. (*Nebraska Press Association v. Stuart* (1976), 427 U.S. 539, 49 L. Ed. 2d 683, 96 S. Ct. 2791; *Irvin v. Dowd* (1961), 366 U.S. 717, 6 L. Ed. 2d 751, 81 S. Ct. 1639.) Citing *People v. Taylor* (1984), 101 Ill. 2d 377, defendant argues, too, that the jurors' assertions that they had formed no opinion as to the guilt or innocence of defendant are not controlling and that the evidence of the "peculiar nature" of the publicized material showed that it was inherently prejudicial to defendant's case.

The People respond that defendant has not pinpointed a single specific instance of lack of fairness in the jury selection or shown that the publicity given the case by the media influenced any particular juror. (*People v. Yonder* (1969), 44 Ill. 2d 376, 388, *cert. denied* (1970), 397 U.S. 975, 25 L. Ed. 2d 270, 90 S. Ct. 1094.) They point out that defendant did not, during *voir dire*, challenge any of the prospective jurors of whom he now complains.

We agree with the People that defendant was not prejudiced by adverse media coverage. The record contains 12 articles from local newspapers and the Chicago Tribune. All are dated August or September 1983, approximately the time of defendant's arrest. None is dated March 1984, the time of defendant's trial. The only indication of media coverage at approximately the time of trial was the report of defendant's remark made on March 7, 1984, that at 7 a.m. in a newscast on WJRC in Joliet, it was stated that defendant's trial was to begin that day.

We find no indications of juror prejudice which may have been caused by exposure to adverse media coverage. Of the 12 jurors selected, nine had heard nothing about the trial prior to *voir dire*. Of the remaining three, although one was somewhat equivocal, all stated under oath that they could render an impartial verdict based on the law and evidence without regard to anything they might have read or heard concerning the case.

In *People v. Speck* (1968), 41 Ill. 2d 177, *modified* (1971), 403 U.S. 946, 29 L. Ed. 2d 855, 91 S. Ct. 2279, the record contained numerous newspaper articles and records of television and radio comments about the case. Media coverage was much more extensive than that here, including an account of Speck's previous criminal record. Of the 12 jurors selected, all had heard or read about the case, but none had preconceived notions of the defendant's guilt. The court held that the question to be determined was "not the amount of publicity in a particular case, but whether the defendant in that case received a fair and impartial trial." (41 Ill. 2d 177, 183.) Relying on *Irvin v. Dowd* (1961), 366 U.S. 717, 722-23, 6 L. Ed. 2d 751, 756, 81 S. Ct. 1639, 1642-43, the court said:

" 'It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.' " *People v. Speck* (1968), 41 Ill. 2d 177, 184.

The court concluded that, when applying these standards, "we focus our inquiry on the ultimate question of whether the jurors at the defendant's trial demonstrated that they were able to lay aside any impression or opinion which they might have had and render a verdict based on the evidence rendered in court." 41 Ill. 2d 177, 184.

Juror exposure to media coverage was further discussed in *People v. Gacy* (1984), 103 Ill. 2d 1, *cert. denied* (1985), 470 U.S. 1037, 84 L. Ed. 2d 799, 105 S. Ct. 1410. The court found the sequestration of jurors in such a highly publicized case to be unnecessary because it might have placed a great burden on the jury members, possibly angering them and prejudicing them against the defendant. The court held, too, that "[d]efendant had no right to be tried in the county which was most likely to be favorably disposed to defendant and his theory of defense." (103 Ill. 2d 1, 43; see also *People v. Sanchez* (1986), Nos. 61239, 63683 cons.) Upon examination of the record in the light of the standards enunciated in *Speck* and *Gacy*, we conclude that, although the crime was of a sensational nature and the publicity extensive, defendant received a trial from a fair and impartial jury.

Our conclusion that the jury was not prejudiced finds further support, in that the record shows that the circuit court repeatedly admonished the jurors to avoid media coverage of the trial and to avoid discussing the case among themselves or with others.

We have considered defendant's contentions in the light of the additional authorities filed after leave given to supplement his brief. We have examined *Coleman v. Kemp* (11th Cir. 1985), 778 F. 2d 1487, and find it clearly distinguishable. In *Coleman,* the conviction arose out of an occurrence in which five members of a farm family were murdered and another raped and murdered. More than 40 pages of the reported opinion are devoted to describing the comments, primarily newspaper articles, disseminated over a period of months. The court, citing *Rideau v. Louisiana* (1963), 373 U.S. 723, 10 L. Ed. 2d 663, 83 S. Ct. 1417, held that the plaintiff had adduced evidence sufficient to meet "the extremely high standard necessary for a successful claim of presumed prejudice." (*Coleman v. Kemp* (11th Cir. 1985), 778 F. 2d 1487, 1543.) The evidence here falls far short of meeting the "extremely high standard."

We consider next defendant's contention that the circuit court's denial of his motion for a bill of particulars and of his request for the issuance of subpoenas precluded his adequately preparing his defense, thus violating his rights under the sixth and fourteenth amendments of the United States Constitution. In his motion for a bill of particulars, defendant requested information regarding the date and time of the offense and the instrument used to commit the crime.

We agree with the People that the resolution of the question whether the People should be required to furnish defendant a bill of particulars is within the sound discretion of the circuit court. (*People v. Curtis* (1968), 41 Ill. 2d 147, 148.) Only where there has been a clear

abuse of discretion will the denial of a motion for a bill of particulars be held to be error. (*People v. Tsukas* (1950), 406 Ill. 613, 617.) The purpose of a bill of particulars is to adequately inform the defendant of the nature of the accusation against him. (*People v. Curtis* (1968), 41 Ill. 2d 147, 148.) "[W]here an indictment sufficiently informs the defendant of the offense charged against him there is no need for a bill of particulars ***." (*People v. Tsukas* (1950), 406 Ill. 613, 616-17.) We hold that the indictment sufficiently informed defendant of the offense with which he was charged; and denial of the motion for a bill of particulars alleging the time, date, and instrument used in the crime was not error. We note that defendant has failed to explain in what manner the denial of the motion impeded his preparation of his defense.

Defendant also contends he was precluded from adequately preparing his defense because the circuit court quashed 89 pretrial subpoenas. Among those subpoenaed were 25% of the personnel of the Will County sheriff's office, a person identified only by the name "Charles," and unnamed members of the Chicago press. Defendant has not stated in what manner the quashing of the subpoenas impeded the preparation of his defense, and the apparent indiscriminate choice of persons to subpoena would support the conclusion that defendant was attempting to use subpoena service as a discovery tool. The use of subpoenas to ensure the attendance of witnesses is an important part of our system of jurisprudence, but it exists constitutionally and statutorily independent of our discovery rules. Defendant has failed to show that the witnesses desired were material to his defense, and their testimonies relevant. (*People v. Robinson* (1961), 22 Ill. 2d 162, 170, *cert. denied* (1961), 368 U.S. 857, 7 L. Ed. 2d 55, 82 S. Ct. 97.) Appropriate discovery procedures were available to defendant, and we

hold that the circuit court did not err in quashing the subpoenas.

Citing *People v. Zehr* (1984), 103 Ill. 2d 472, defendant urges that the circuit court's refusal to ask prospective jurors during *voir dire* if they believed in defendant's presumption of innocence was an abuse of discretion which mandates reversal of defendant's conviction.

In *People v. Britz* (1986), 112 Ill. 2d 314, 319, we said: "As the holding in *Zehr* represented a change in Illinois law it is given prospective application." *Zehr* was decided after the trial here. The *voir dire* examination was properly conducted under the provisions of Rule 234, which as we noted in *Britz* "explicitly prohibited questions during the *voir dire* examination which 'directly or indirectly concern[ed] matters of law or instructions.' (87 Ill. 2d R. 234.)" 112 Ill. 2d 314, 319.

Defendant contends next that the circuit court erred in compelling him to produce tape recordings made by defendant's investigators of interviews with eight witnesses listed by the People. Relying on *People ex rel. Bowman v. Woodward* (1976), 63 Ill. 2d 382, defendant argues that it was error to order disclosure of information which he did not plan to disclose at trial. He contends that the order violated his constitutional right against self-incrimination and was contrary to the work-product rule. We do not agree.

*Woodward* is factually inapposite, and involved an order compelling the defendant to produce statements and reports prepared at defendant's request by expert witnesses. We find controlling the decision in *United States v. Nobles* (1975), 422 U.S. 225, 45 L. Ed. 2d 141, 95 S. Ct. 2160, and as stated in *Woodward* hold that statements of third parties elicited by the defendant's investigator were discoverable, and the People properly invoked the court's inherent power to require production

of those statements. The constitutional privilege against self-incrimination is personal to defendant and did not extend to the statements taken of the witnesses.

We find defendant's contentions concerning the violation of the work-product rule to be without merit. The work-product rule recognized by the Supreme Court in *Hickman v. Taylor* (1947), 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385, for well-established reasons which need not be repeated here, protects from discovery the mental processes of an attorney in the preparation of his client's case. The verbatim statements of witnesses obtained by the investigator here do not fall within the scope of protection afforded by the rule.

We consider next defendant's contention that comments made by the circuit court, the court's repetitive admonishing of defendant, and the court's obvious disdain for defendant, all in the presence of the jury, resulted in prejudice which denied him a fair trial. The record shows that defendant insisted on acting as his own counsel and displayed little interest in assistance offered by "stand by" counsel appointed by the court. The record shows that despite defendant's lengthy arguments and statements, repetitious and time-wasting cross-examination, and numerous meaningless objections, the court exercised remarkable restraint. The comments of which defendant complains were elicited by his conduct and his contentions are without merit.

We consider next defendant's contention that the in-court identification of defendant by Dorsey Spencer, a witness called by the People, was highly suggestive, thereby depriving defendant of due process. During direct examination of the witness the following ensued:

"Q. Mr. Spencer, are you acquainted with Donald Lego?

A. Yes, sir.

Q. How—do you see him in the courtroom?

A. No, I don't.

Q. You don't see Donald Lego in the courtroom. I direct your attention to the table here.

THE DEFENDANT: Objection, your Honor.

THE COURT: Overruled.

THE DEFENDANT: Thank you.

MR. LECHWAR [assistant State's Attorney]: Right here, sir, this gentleman here. Do you recognize this gentleman here?

THE WITNESS: Yes, I do, now.

MR. LECHWAR: Q. Do you know who that is?

A. Yes.

Q. Would you state for the record what this gentleman's name is?

A. Donald Lego."

The authorities cited by defendant for the proposition that unnecessarily suggestive and conducive identification procedures lead to irreparable mistaken identification and denial of due process are inapplicable because they involve allegedly suggestive pretrial identification procedures and their possible taint upon later in-court identification. (*People v. McTush* (1980), 81 Ill. 2d 513; *People v. Lee* (1973), 54 Ill. 2d 111; *People v. Blumenshine* (1969), 42 Ill. 2d 508.) In *People v. King* (1973), 54 Ill. 2d 291, an in-court identification of the defendant, at least as suggestive as the foregoing, was held admissible. (54 Ill. 2d 291, 299.) The court, holding that the defendant's due process rights were not violated because the jury had the opportunity to weigh the credibility of the witness' testimony, said:

"The identification by the witness Lookanoff was indeed the result of suggestive questioning, but the entire process, suggestive questions and all, took place in the presence of the jurors, who were in a position to determine the weight to be given to the fact that the defendant was wearing glasses in the courtroom, the difficulty of the witness with the English language, and all other

attendant circumstances. We do not agree that the identification was inadmissible." (54 Ill. 2d 291, 299.)

The circuit court did not err in admitting Spencer's testimony.

Defendant contends next that, in denying his motion for a mistrial or alternatively to exclude certain evidence, the circuit court denied him due process and violated his right of confrontation guaranteed under the sixth amendment to the United States Constitution. The record shows that the circuit court allowed defendant's pretrial discovery motion which requested, *inter alia*, the substance of any scientific tests or comparisons of the physical evidence obtained by the People. The People produced for defendant copies of three reports prepared by David Metzger, an employee of the crime laboratory of the Illinois Department of Law Enforcement. Metzger had examined certain objects found at the scene, including a shirt. He testified that the shirt was similar to one worn by defendant in a photograph taken the day of the murder. He testified, *inter alia*, concerning certain measurements made of the shirt. The reports, although describing other tests conducted, contained no mention of such measurements. Defendant argues that the incomplete response to discovery prejudiced his case and that the court erred in not granting his motion.

We are not here presented with a knowing failure on the part of the People to produce information which defendant was entitled to obtain on discovery. The record demonstrates that defendant received the verbatim reports which contained no mention of the measurements, and defendant does not contend that there were other reports. Assuming, *arguendo*, that the failure to furnish the information in some manner resulted in error, we hold it to be harmless. The jury saw the shirt and the photograph and heard the testimony of a witness who said the shirt was defendant's. The measure-

ments added little to Metzger's testimony, and defendant does not point out in what manner the evidence was prejudicial. The evidence was not essential to support defendant's conviction, and absent a showing of prejudice, the error, if any, does not require reversal. *People v. Greer* (1980), 79 Ill. 2d 103.

Defendant contends next that the People engaged in improper closing argument so inflammatory and prejudicial as to require reversal. Although we could hold that defendant's failure to object during the argument waived the error (*People v. Owens* (1984), 102 Ill. 2d 88, *cert. denied* (1984), 469 U.S. 963, 83 L. Ed. 2d 297, 105 S. Ct. 362; *People v. Hampton* (1969), 44 Ill. 2d 41), we elect to review the alleged error.

Defendant complains that the assistant State's Attorney's comment, repeated several times, that if defendant "is guilty of one [count of murder], he is guilty of all," distorted the People's burden of proof of guilt beyond a reasonable doubt.

Although defendant put on no evidence, the theory of his defense was that he was not the culprit. The offense charged was one homicide committed under circumstances which under four statutes constituted murder. Defendant's theory of defense was common to all the charges, and we fail to perceive prejudicial error. In *People v. Smothers* (1973), 55 Ill. 2d 172, the court said:

"The character and scope of argument to the jury is left very largely to the trial court, and every reasonable presumption must be indulged in that the trial judge has performed his duty and properly exercised the discretion vested in him. [Citation.] The general atmosphere of the trial is observed by the trial court, and cannot be reproduced in the record on appeal. The trial court is, therefore, in a better position than a reviewing court to determine the prejudicial effect, if any, of a remark made during argument, and unless clearly an abuse of discre-

tion, its ruling should be upheld. [Citation.]" 55 Ill. 2d 172, 176.

Applying the standards of *Smothers* we hold that in permitting the argument the court did not abuse discretion.

Defendant contends next that the circuit court erred in allowing the People's motion for a unitary sentencing hearing and that permitting the jury to hear evidence of nonstatutory aggravating matters, along with evidence of statutory aggravating factors, so prejudiced defendant as to require reversal. He argues that the statute requires that a hearing be held to determine the existence of a statutory aggravating factor prior to proceeding with the second stage at which hearsay is admissible. We note initially that defendant failed to object to any of the evidence on the grounds now urged, and tendered no instructions. Defendant argues, too, that the jury was not properly instructed on the differing standards of proof or how to use and apply the evidence presented at the hearing. He also contends that evidence of his prior convictions for automobile larceny, armed robbery, vagrancy, jail-breaking, and robbery, introduced as evidence of nonstatutory aggravating factors, should not have been admitted, because the jury was not instructed as to how to separate and apply this evidence. He asserts that none of this information was relevant to his eligibility for a death sentence. Although the record would support our finding the alleged error waived, we consider it.

The People contend, and we agree, that the issues here presented were raised and considered in *People v. Del Vecchio* (1985), 105 Ill. 2d 414. In *Del Vecchio*, we held that failure to hold a bifurcated hearing did not prejudice the defendant (105 Ill. 2d 414, 432), and that evidence of the defendant's past felony convictions was admissible as proof of nonstatutory aggravating factors. In *Del Vecchio*, we did not exclude the possibility that a

factual situation might arise where a bifurcated hearing would be mandated, but such is not the case here. The statutory aggravating factor which the People sought to prove was that the murder occurred during the commission of a felony. In view of the verdicts finding defendant guilty of murder on all four counts, we fail to perceive in what manner the evidence of nonstatutory aggravating factors could have affected the jury's verdict regarding the existence of statutory aggravating factors.

Defendant contends that the circuit court erred in entering judgment on each of the four murder counts. Defendant contends that since there was only one homicide, under the rule that convictions for more than one offense cannot be carved from the same physical act, he could be convicted of only one murder. (*People v. Szabo* (1983), 94 Ill. 2d 327, 350; *People v. King* (1977), 66 Ill. 2d 551, 566, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) We agree. When multiple convictions are obtained for offenses arising out of a single act, sentence may be imposed only for the most serious offense. (*People v. Mack* (1984), 105 Ill. 2d 103, 137; *People v. Donaldson* (1982), 91 Ill. 2d 164, 170.) In *Mack*, we found that, because it involves a more culpable mental state, intentional murder is a more serious crime than felony murder, and that therefore, upon affirmance of defendant's conviction for intentional murder, the other convictions had to be vacated.

We do not agree with defendant that because the jury was allowed to consider the three felony-murder convictions he was denied a fair sentencing hearing. The fact that defendant could be sentenced to only one death penalty does not alter his conduct in the commission of the offense, and we fail to see how it could be prejudicial for the jury which found him guilty to know of the verdicts. In *Mack*, we rejected the contention that defendant was

denied a fair sentencing hearing and affirmed the death sentence imposed. (*People v. Mack* (1984), 105 Ill. 2d 103, 137.) We adhere to that holding here.

Defendant contends next that his death sentence must be vacated because the jury was erroneously permitted to consider as two aggravating factors the findings that defendant killed the victim in the course of committing other felonies, whereas as a matter of law there was only one such aggravating factor. The jury returned separate verdicts finding in one that the murder was committed while committing the offense of burglary with intent to commit theft and in the other while committing armed robbery. Defendant contends that, as the result of considering these as multiple statutory factors, the sentence of death was arbitrarily and capriciously imposed. Citing *People v. Brownell* (1980), 79 Ill. 2d 508, he argues that, regardless of the verdicts, his conduct constituted only one aggravating factor. *Brownell* is clearly distinguishable. In *Brownell*, the defendant was convicted of intentional murder, aggravated kidnaping and rape. When imposing the death penalty, the circuit court found as an aggravating factor that the murder victim was killed because she was an eyewitness against the defendant. (79 Ill. 2d 508, 514.) Despite the fact that the court upheld the finding that the murder was committed while committing the felonies of aggravated kidnaping and rape, the court vacated the defendant's sentence and remanded for a new sentencing hearing, holding, as a matter of statutory interpretation, that as a matter of law the killing of the victim could not be an aggravating factor.

We do not agree with defendant that the record shows that the jury considered the evidence as proof of multiple aggravating factors. The instruction given by the court states clearly that a finding that the murder was committed while defendant was committing another

felony could be an aggravating factor, and we find no impropriety in the sentencing procedure.

We consider next defendant's contention that he was denied a fair sentencing hearing because the jury was permitted to consider improper nonstatutory aggravating factors, including unproved charges of previous prison escapes, repeated reference to his recent parole for an offense committed in a manner similar to the present one, testimony that an FBI "rap sheet" existed, and evidence of juvenile adjudications where evidence of nonstatutory aggravating factors was introduced during the sentencing hearing.

This argument is without merit. A defendant is not prejudiced where, at a unitary sentencing hearing, the jury hears as evidence of nonstatutory aggravating factors a summary of defendant's past criminal conduct. (*People v. Brisbon* (1985), 106 Ill. 2d 342, 365; *People v. Del Vecchio* (1985), 105 Ill. 2d 414, 432; *People v. Owens* (1984), 102 Ill. 2d 145, 159-60, *cert. denied* (1984),. 469 U.S. 963, 83 L. Ed. 2d 297, 105 S. Ct. 361 (*Owens II*); *People v. Owens* (1984), 102 Ill. 2d 88, 109-14, *cert. denied* (1984), 469 U.S. 963, 83 L. Ed. 297, 105 S. Ct. 362 (*Owens I*); *People v. Free* (1983), 94 Ill. 2d 378, 426-27; *People v. La Pointe* (1981), 88 Ill. 2d 482, 495-99.) In *Brisbon*, the court said:

> "The only limitations upon evidence to be admitted at the aggravation and mitigation phases of the sentencing hearing are relevance and reliability; the hearing is not confined by rules of evidence in effect at the guilt phase of the trial. ([Citations]; Ill. Rev. Stat. 1979, ch. 38, par. 9—1(e).)" *People v. Brisbon* (1985), 106 Ill. 2d 342, 364-65.

The court held, too, that evidence pertaining to a defendant's prior misconduct is admissible although the misconduct may not have resulted in prosecution or conviction. The question on review is whether the circuit court abused its discretion in finding the evidence con-

cerning defendant's prior misconduct relevant and reliable. (106 Ill. 2d 342, 365.) The testimony regarding defendant's previous prison escapes, and evidence pertaining to his FBI "rap sheet," were highly relevant to the imposition of the death penalty because they provided the jury with the most complete information possible regarding defendant's life and characteristics. (*Owens I*, 102 Ill. 2d 88, 110-11.) Defendant's record of violent criminality began at an early age, and this pattern continued for over 40 years. The jury was properly informed of defendant's prior criminal history for consideration of the question whether the death penalty was appropriate. Regarding the admission of defendant's juvenile adjudications, it was held in *Owens II* (*People v. Owens* (1984), 102 Ill. 2d 145) that, because the focus in a death sentencing hearing is on the record and character of the accused, a defendant's prior delinquency adjudications are highly relevant in determining whether the defendant's character is such that death is the appropriate punishment. (102 Ill. 2d 145, 160.) We conclude that the circuit court did not abuse its discretion in admitting evidence of defendant's prior criminal history in aggravation.

Defendant next urges that the imposition of the death penalty was arbitrary and capricious because in his argument during the sentencing hearing the assistant State's Attorney made highly prejudicial remarks. Defendant cites as prejudicial the statements that the jury should consider only the circumstances of the offense, and no other factors; that the jury need not consider compassion and mercy; that only the death penalty would be consistent with the dignity of the entire criminal justice system; and that the jury's rendering a verdict of death would only be a "recommendation," not a final adjudication. Defendant cites *Lockett v. Ohio* (1978), 438 U.S. 586, 57 L. Ed. 2d 973, 98 S. Ct. 2954, for the proposition that

the focus in death penalty proceedings should not only be on the circumstances of the particular offense, but also on the character and record of the offender. 438 U.S. 586, 605, 57 L. Ed. 2d 973, 990, 98 S. Ct. 2954, 2965.

In our opinion the comments of which defendant complains are not violative of *Lockett*. The assistant State's Attorney argued that the jury must consider certain additional matters "which we believe are necessary for you to properly evaluate whether or not the more severe penalty [death, as opposed to imprisonment] should be the alternative that you should choose." He further told the jurors:

"When you examine *** the evidence in this case *** you are to consider the evidence that was presented at the trial phase, the guilt-finding phase. What you are going to find in my opinion are circumstances which certainly make this defendant eligible for your consideration of the death penalty and based upon the additional factors which are presented to you, in this long and extensive criminal history, certainly warrant if you so choose, a verdict which will sentence him to death."

He concluded that if the jurors "determine that the defendant is eligible [for the death penalty], *** then you have to consider other factors in making this very big decision, and these are the factors." The evidence of defendant's extensive criminal history and violent lifestyle was, of course, properly considered, and we find no error which could result in prejudice to the defendant.

We find without merit defendant's argument that the assistant State's Attorney improperly argued that the jury could not consider compassion or mercy for defendant. We agree with the People that defendant reads the prosecutor's argument out of context; when the State's Attorney told the jurors to disregard "sympathy and compassion for this person," he was arguing that they

should not feel sympathy for defendant merely because he had chosen to defend himself, and because the jurors might be "irritable at some of the things" defendant or the People had done during trial. We conclude that the prosecutor's argument was not an attempt to misinform the jurors that they could not consider compassion as a mitigating factor.

We also disagree with defendant that the prosecutor improperly argued that only the imposition of a sentence of death would be consistent with dignity and their personal commitment to the law, and that which is consistent with the dignity of the proper administration of the criminal justice system. We fail to find, as defendant urges, that such argument improperly incites the jury's passions, fears and emotions with the prosecutor's personal beliefs concerning the desirability of the death penalty. (*People v. Holman* (1984), 103 Ill. 2d 133, 170.) In *Holman*, the prosecutor improperly argued that the jury must impose the death sentence rather than imprisonment in order to preclude defendant from killing prison guards or other innocent victims should he escape from prison. (103 Ill. 2d 133, 162.) We distinguished prosecutorial argument which generally explains the deterrence rationale behind the death penalty from prejudicial remarks directed at the particular defendant, and concluded only the latter type of argument was improper. (103 Ill. 2d 133, 162.) The prosecutor's argument here was a permissible explanation of the deterrence rationale behind the death penalty, and was not so highly prejudicial as to require a new sentencing hearing.

Defendant next argues that the State's Attorney minimized the jury's function by suggesting that its decision was merely a "recommendation," and not a final judgment as to defendant's sentence. Defendant relies on *Caldwell v. Mississippi* (1985), 472 U.S. 320, 330, 86 L. Ed. 2d 231, 240, 105 S. Ct. 2633, 2640. We find *Caldwell*

to be inapposite. The prosecutor there argued that the jurors should not view themselves as the final arbiters of whether the defendant would die, because their sentence of death would be reviewed for correctness by the Mississippi Supreme Court. The Supreme Court found this argument to be reversible error because it took away from the jury the seriousness with which it should treat its power to determine the appropriateness of the death penalty. (472 U.S. 320, 330, 86 L. Ed. 2d 231, 240, 105 S. Ct. 2633, 2640.) We find no such comment to have been made by the State's Attorney here, nor do we find his remarks to be "state-induced suggestions that the sentencing jury may shift its sense of responsibility to an appellate court." (472 U.S. 320, 330, 86 L. Ed. 2d 231, 240, 105 S. Ct. 2633, 2640.) Rather, the prosecutor did admonish the jury that it had "to decide what is the proper penalty that needs to be imposed." His further admonishments support this remark and in no way tend to shift the jury's responsibility as the sentencing authority.

Defendant next contends that the circuit court's instruction at the sentencing hearing that the jury should not consider sympathy for defendant in mitigation was improper and a violation of defendant's eighth and fourteenth amendment rights. Defendant argues that the instruction precluded the jury from considering any relevant mitigating factors in determining the propriety of the death penalty. This issue was considered in *People v. Del Vecchio* (1985), 105 Ill. 2d 414. The court held that it was proper for the circuit court to give instructions in the form of Illinois Pattern Jury Instructions (IPI), Criminal, No. 1.01 (2d ed. 1981), informing the jurors that neither sympathy nor prejudice should influence them. 105 Ill. 2d 414, 445.

Defendant further argues it was error to instruct the jury that the alternative to the death penalty was impris-

onment, without also instructing the jury that life imprisonment was the only statutory alternative to the death penalty. He urges that it was error to instruct the jury to consider defendant's potential for rehabilitation. We addressed these issues in *People v. Albanese* (1984), 102 Ill. 2d 54, *cert. denied* (1984), 469 U.S. 892, 83 L. Ed. 2d 205, 105 S. Ct. 268 (*Albanese I*), and held neither of these instructions to be improper. The jury is responsible only in deciding the applicability of the death penalty, not the severity of the prison sentence should the death penalty be found inappropriate. (102 Ill. 2d 54, 81.) Furthermore, the "potential for rehabilitation is a constitutionally mandated factor to be considered by the sentencing authority." 102 Ill. 2d 54, 79; Ill. Const. 1970, art. I, sec. 11.

Defendant next raises several contentions that our death penalty statute (Ill. Rev. Stat. 1981, ch. 38, par. 9—1) is unconstitutional. These include the argument that the statute does not provide adequate appellate review procedures (*People v. Madej* (1985), 106 Ill. 2d 201; *People v. Szabo* (1983), 94 Ill. 2d 327; *People v. Brownell* (1980), 79 Ill. 2d 508), the argument that the statute fails to require that all aggravating factors relied upon by the sentencer be relevant or constitutionally permissible (*People v. Albanese* (1984), 104 Ill. 2d 504 (*Albanese II*)), the argument that the statute fails to require that the sentencer find that aggravation outweighs mitigation and that the death sentence is appropriate, and arguments concerning the burden of proving that death is an appropriate sentence (*People v. Del Vecchio* (1985), 105 Ill. 2d 414; *Albanese II* (1984), 104 Ill. 2d 504); *Albanese I* (1984), 102 Ill. 2d 54), the argument that the statute fails to require that the People prove beyond a reasonable doubt the absence of mitigating factors sufficient to preclude the death penalty (*People v. Madej* (1985), 106 Ill. 2d 201; *People v. Eddmonds* (1984), 101 Ill. 2d 44,

*cert. denied* (1984), 469 U.S. 894, 83 L. Ed. 2d 207, 105 S. Ct. 271; *People v. Garcia* (1983), 97 Ill. 2d 58, *cert. denied* (1984), 467 U.S. 1260, 82 L. Ed. 2d 856, 104 S. Ct. 3555), and the argument that the discretion vested in the prosecutor whether to seek the death penalty results in the arbitrary and capricious imposition of the death penalty (*People v. Brisbon* (1985), 106 Ill. 2d 342, 362; *People v. Madej* (1985), 106 Ill. 2d 201, 211; *People v. Owens* (1984), 102 Ill. 2d 145, 160; *People ex rel. Carey v. Cousins* (1979), 77 Ill. 2d 531, 535-36, *cert. denied* (1980), 445 U.S. 953, 63 L. Ed. 2d 788, 100 S. Ct. 1603). Because these contentions have previously been fully considered and rejected by this court, and defendant presents no new argument warranting reconsideration, we decline to further discuss them.

Defendant's last contention is that the death penalty statute is unconstitutional because it does not provide adequate guidelines to distinguish those persons eligible for death under the provision of section 9—1(b) *et seq.* of the Criminal Code of 1961 from those persons convicted of murder and eligible for sentencing under the provision of chapter V of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—1—1 *et seq.*). We do not agree. This argument fails to take into account the unique sentencing procedure afforded those defendants found eligible for the death penalty, the provision for a two-step sentencing process, and the consideration during the second phase of factors introduced as evidence in mitigation and aggravation. This procedure enables the sentencer to independently weigh these factors and, upon determining whether the mitigating factors outweigh the aggravating factors, decide if the death penalty will be imposed. This procedure enables the sentencer to weigh the individual characteristics of the offender and determine his character. (*Lockett v. Ohio* (1978), 438 U.S. 586, 605-06, 57 L. Ed. 2d 973, 990, 98

S. Ct. 2954, 2965.) Those defendants sentenced under the Unified Code of Corrections are not eligible for this special sentencing treatment. Therefore, because the two-stage sentencing determination does distinguish those persons eligible for death from those persons found guilty of murder, defendant's argument must fail.

For the reasons stated, that portion of the judgment based on the felony counts is vacated, and otherwise the judgment of the circuit court of Will County is affirmed. The clerk of this court is directed to enter an order setting Wednesday, May 13, 1987, as the date on which the sentence of death entered in the circuit court of Will County is to be implemented. The defendant shall be executed by lethal injection in the manner provided by section 119—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 119—5). A certified copy of the mandate of this court shall be transmitted by the clerk of this court to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution wherein defendant is confined.

*Affirmed in part and*
*vacated in part.*

JUSTICE SIMON, dissenting:

The majority holds that the rule fashioned in *People v. Zehr* (1984), 103 Ill. 2d 472, requiring trial judges to probe potential juror biases, including biases against the presumption of innocence, does not apply to this case because the *voir dire* here occurred before this court's opinion in *Zehr* was filed. To reach this result, the court invokes *People v. Britz* (1986), 112 Ill. 2d 314, which contained language suggesting that the *Zehr* rule would not be retroactive. In my view, *Britz* was fundamentally misguided when it was rendered, and subsequent developments in the law of retroactivity have fully illuminated

the error this court fell into when it gave *Zehr* only prospective application.

The court's language in *Britz* concerning the retroactivity of the *Zehr* rule constituted no more than an advisory opinion; as the court recognized there, Britz himself would receive the benefit of the *Zehr* rule since we reversed his conviction on other grounds and remanded for a new trial. Indeed, the discussion of retroactivity in *Britz* was doubly unnecessary because the *voir dire* of which he complained occurred after the appellate court opinion in *People v. Zehr* (1982), 110 Ill. App. 3d 458. The appellate court in *Zehr* had ruled, as we later agreed, that the trial judge should have questioned jurors as to their biases against the defendant's constitutional guarantees. *Britz* undercut the authority of the appellate court by failing to give prospective effect to the appellate court's opinion in *Zehr*.

The court commits the same error here. The defendant in this case was tried long after the appellate court had spoken in *Zehr*; in fact, the appellate court's opinion was handed down by a panel in the third district, the same district in which the trial court here sat. If the majority here is right, we should abandon what I understand is our accepted rule that trial judges are bound by the decisions of the appellate court.

Just as in *Britz*, the majority reaches the retroactivity question when there is no need to do so. For the reasons explained in my concurring opinion in that case, I do not believe there has been any change in the law, and thus retroactivity is not at issue. But even assuming the *Zehr* rule represented a clear break with the past, it should be applied to convictions, such as this one, that were not yet final when this court decided *Zehr*. *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708.

In *Griffith*, the United States Supreme Court reexamined its retroactivity jurisprudence and concluded that new constitutional principles should be applied retroactively to cases still pending on direct review, even when such a principle constitutes a "clear break." Two reasons compelled the court's decision in *Griffith*, and they are equally applicable here. First, the court found that failure to apply a new constitutional principle to convictions still not final transforms the court from a judicial body into a legislative one. Nonretroactivity permits a court to formulate a new principle but later to disregard the current state of the law by declining to apply it in adjudicating specific cases before it. "[I]t is the nature of judicial review that precludes us from '[s]imply fishing one case from the stream of appellate review, using it as a vehicle for pronouncing new constitutional standards, and then permitting a stream of similar cases subsequently to flow by unaffected by that new rule.' " *Griffith v. Kentucky* (1987), 479 U.S. 314, 323, 93 L. Ed. 2d 649, 658, 107 S. Ct. 708, 713, quoting *Mackey v. United States* (1971), 401 U.S. 667, 679, 28 L. Ed. 2d 404, 412-13, 91 S. Ct. 1160, 1173 (Harlan, J., concurring).

Second, in *Griffith* the Supreme Court determined that nonretroactivity violated the principle of treating similarly situated defendants similarly. The defendant in this case differs from the defendant in *Zehr* only in that *Zehr* came before us on appeal earlier. This fortuity furnishes no reason for applying the new rule to the defendant in *Zehr* but not the defendant here.

Under the law that we are obliged to apply in this case, the trial judge erred in not probing possible juror biases against the presumption of innocence. The error was particularly critical here in light of the pretrial publicity which the case had received and in light of one juror's statement that "I don't know if my mind is that

strong" to disregard the publicity. This conviction should be reversed and the case remanded for a new trial.

Next, I point to a facial inconsistency in the court's opinion concerning the importance or necessity of holding a bifurcated capital sentencing hearing. In a bifurcated or two-step hearing, the jury first considers the defendant's eligibility for the death penalty. If it finds the defendant is eligible, the parties then present evidence in aggravation and mitigation, and the jury must decide if the death penalty is actually appropriate. In this case, however, a unitary proceeding was held—the jury considered both the defendant's eligibility and the appropriateness of a death sentence at the same time. As it has in the past (*People v. Del Vecchio* (1985), 105 Ill. 2d 414), the court rejects the defendant's claim that the unitary procedure is improper and that he is entitled to a two-step determination. It seems inexplicable to me, then, that the majority relies on the very existence of the two-step procedure in rejecting another of the defendant's arguments.

The defendant contends that the death penalty statute is unconstitutional because it does not provide adequate guidelines for distinguishing those eligible for the death penalty from those convicted of murder and eligible for conventional sentencing. The majority responds: "This argument fails to take into account the unique sentencing procedure afforded those defendants found eligible for the death penalty, *the provision for a two-step sentencing process*, and the consideration during the *second phase* of factors introduced as evidence in mitigation and aggravation." (Emphasis added.) (116 Ill. 2d at 352.) Beyond the fact that this is difficult to understand, it flatly contradicts the majority's earlier assertion that the two-step process is not an indispensable aspect of the system. If the two-step procedure is critical to the constitutionality of the statute, how can it logically be ex-

plained that the majority can find no error in the unitary proceeding conducted here?

Finally, for the reasons set forth in my separate opinions in *People v. Lewis* (1981), 88 Ill. 2d 129, 179 (Simon, J., dissenting), in *People v. Silagy* (1984), 101 Ill. 2d 147, 184 (Simon, J., concurring in part and dissenting in part), and in *People v. Albanese* (1984), 104 Ill. 2d 504, 549 (Simon, J., concurring in part and dissenting in part), I believe that the Illinois death penalty statute is unconstitutional and that the death sentence in this case should be vacated. See also *United States ex rel. Lewis v. Lane* (C.D. Ill. Jan. 8, 1987), No. 86—2086, slip op. at 29 (expressing "grave doubts" over the constitutionality of the Illinois death penalty statute).