(No. 74209.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. HENRY BRISBON, Appellant.

*Opinion filed January 19, 1995.—Rehearing denied April 3, 1995.*

240

HARRISON, J., dissenting.

Margaret Byrne and Janine L. Hoft, both of Chicago, for appellant.

Roland W. Burris, Attorney General, of Chicago, and James J. Glasgow, State's Attorney, of Joliet (Rosalyn B. Kaplan, Solicitor General, and Arleen C. Anderson and Michael M. Glick, Assistant Attorneys General, of Chicago, of counsel), for the People.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

The defendant, Henry Brisbon, brings this appeal from an order of the circuit court of Will County dismissing his post-conviction petition. In 1985, the defendant, who was incarcerated at the Stateville prison, was convicted by a jury for the murder of fellow prison inmate Richard "Hippie" Morgan. The defendant was sentenced to death. On direct appeal, this court affirmed the defendant's conviction, but reversed and remanded the cause for a new sentencing hearing due to prosecutorial misconduct. *People v. Brisbon* (1985), 106 Ill. 2d 342.

Following a second sentencing hearing before a jury, the defendant was again sentenced to death. On direct appeal from that sentence, this court affirmed the defendant's sentence. (*People v. Brisbon* (1989), 129 Ill. 2d 200.) The United States Supreme Court denied the defendant's petition for a writ of *certiorari. Brisbon v. Illinois* (1990), 494 U.S. 1074, 108 L. Ed. 2d 797, 110 S. Ct. 1796.

In 1990, the defendant, with the assistance of counsel, filed a preliminary petition for relief under the Post-Conviction Hearing Act. (Ill. Rev. Stat. 1989, ch. 38, par. 122—1 *et seq.*) The State filed a motion to dismiss the preliminary post-conviction petition. Thereafter, the defendant, again with the assistance of counsel, filed an amended post-conviction petition. After reviewing the amended post-conviction petition, the trial court determined that the defendant failed to raise any constitutional issues that would require a full eviden-

tiary hearing. Accordingly, the trial judge dismissed the defendant's post-conviction petition. The defendant now appeals to this court. 134 Ill. 2d R. 651(a).

For the following reasons, we affirm the judgment of the circuit court of Will County.

PREFATORY NOTE

The Post-Conviction Hearing Act (Act) (Ill. Rev. Stat. 1989, ch. 38, par. 122—1 *et seq.*) provides a remedy to a criminal defendant who claims that a substantial violation of his Federal or State constitutional rights occurred in the proceedings that resulted in his conviction. (*People v. Eddmonds* (1991), 143 Ill. 2d 501, 510.) A proceeding under the Act is not an appeal *per se*, but a collateral attack on a prior judgment. (*People v. Caballero* (1989), 126 Ill. 2d 248, 258-59.) In order to prevail under the Act, the defendant must establish a substantial deprivation of his rights under the United States Constitution or the Constitution of Illinois. *People v. Griffin* (1985), 109 Ill. 2d 293, 303.

We comment briefly about the history of section 122—2.1 of the Act. Prior to 1990, post-conviction petitioners were not entitled to the assistance of counsel in drafting their post-conviction petition. When a petitioner filed a post-conviction petition, the trial court reviewed the petition to determine whether it was frivolous or patently without merit. (See Ill. Rev. Stat. 1987, ch. 38, par. 122—2.1(a).) If the petition was frivolous, the trial court dismissed it without appointing counsel. (Ill. Rev. Stat. 1987, ch. 38, par. 122—2.1(a).) If the petition was not frivolous, the trial court appointed counsel to assist the petitioner in filing an amended post-conviction petition. (Ill. Rev. Stat. 1987, ch. 38, par. 122—4.) The amended petition was then subject to the State's motion to dismiss. Ill. Rev. Stat. 1987, ch. 38, par. 122—5.

In 1989, however, the legislature enacted Public Act

86—655 (effective Jan. 1, 1990), to amend section 122—2.1(a) of the Act (see Ill. Rev. Stat. 1987, ch. 38, par. 122—2.1(a)). The revised section provides that where a post-conviction petitioner is under a sentence of death, the court shall appoint counsel to assist the petitioner in preparing the post-conviction petition if the petitioner is without funds to procure counsel. (Ill. Rev. Stat. 1989, ch. 38, par. 122—2.1(a)(1).) Public Act 86—655 also created section 122—2.1(a)(2), which provides that if a prisoner is sentenced to imprisonment and the court determines the petition is frivolous or is patently without merit, it shall dismiss the petition. (Ill. Rev. Stat. 1989, ch. 38, par. 122—2.1(a)(2).) The trial court need not appoint counsel before it dismisses the petition of a prisoner not sentenced to death.

The dissent contends that the trial court's order was void because the trial court failed to follow the procedures established in section 122—2.1(b) (Ill. Rev. Stat. 1989, ch. 38, par. 122—2.1(b)). The dissent claims that the Act required the circuit court to order the petition to be docketed for further consideration in accordance with sections 122—4 through 122—6 of the Act (Ill. Rev. Stat. 1989, ch. 38, pars. 122—4 through 122—6; par. 122—2.1(b)). The trial court could have then dismissed the petition only after the State filed a motion to dismiss the amended post-conviction petition. (Ill. Rev. Stat. 1989, ch. 38, par. 122—5.) According to the dissent, the fact that the trial court dismissed the amended petition before the State filed a motion to dismiss renders the trial court's order void. The defendant did not object at trial to this alleged error, nor did he ever raise this issue before this court.

We do not find that this minor procedural irregularity rendered the trial court's order void. It is evident that the legislature amended section 122—2.1(a) to provide a post-conviction petitioner under a death

sentence with the assistance of counsel in drafting his petition for post-conviction relief. In this case, the court complied with the statute by providing the defendant with the assistance of counsel in drafting *both* his preliminary and amended post-conviction petitions.

As previously noted, the State filed a motion to dismiss the preliminary petition. The motion to dismiss argued that the defendant's filing of a "preliminary" post-conviction petition was a further attempt to delay the execution of his death sentence. At that time, 12 years had passed since the defendant had committed the murder for which he was convicted and ultimately sentenced to death. The State's motion reflects its frustration with the defendant's continued attempt to thwart the judicial process by raising numerous issues that had already been reviewed and rejected in the trial and appellate courts.

The defendant thereafter filed an amended post-conviction petition, again with the assistance of counsel. The trial court reviewed the amended petition and dismissed it as frivolous. While it is true that the trial court dismissed the amended petition before the State had the opportunity to file *yet another* motion to dismiss, we nevertheless find that the trial court's order was valid. The dissent attempts to elevate form over substance. The slight procedural deviation does not render the trial court's order void.

## ANALYSIS

The defendant challenges the trial court's dismissal of his amended post-conviction petition without an evidentiary hearing. The defendant, however, is not entitled to an evidentiary hearing unless the allegations of the petition, supported where appropriate by the trial record or by accompanying affidavits, make a substantial showing that the defendant's rights have been violated. (*People v. Gaines* (1984), 105 Ill. 2d 79, 91-92.) For the

purpose of determining whether to grant an evidentiary hearing, all well-pleaded facts in the petition and in any accompanying affidavits are to be taken as true. *Caballero*, 126 Ill. 2d at 259, citing *People v. Cihlar* (1986), 111 Ill. 2d 212.

## Ineffective Assistance of Counsel

### A. *Sentencing Hearing*

The facts of this case are adequately set forth in this court's opinion on the defendant's direct appeal, and will be repeated here only where necessary. The defendant's post-conviction petition alleges, *inter alia*, that he was deprived of the effective assistance of counsel at his sentencing hearing in violation of the sixth amendment. The defendant argues that his counsel was incompetent because his lawyer failed to investigate or present substantial mitigating evidence to the sentencing jury, and that he was prejudiced by such incompetence.

The State maintains that the defendant has waived this issue by failing to raise it on direct appeal, particularly because he was represented by different counsel on direct appeal than at trial. Principles of *res judicata* and waiver limit the scope of post-conviction review "to constitutional matters which have not been, and could not have been, previously adjudicated." (*People v. Winsett* (1992), 153 Ill. 2d 335, 346.) However, the waiver rule is relaxed where the facts relating to the issue of incompetency do not appear on the face of the record. (See *People v. Owens* (1984), 102 Ill. 2d 145; *Gaines*, 105 Ill. 2d at 91.) As the record does not show that the mitigation evidence that the defendant now presents was on the face of the record and available to the defendant's counsel on direct appeal, we will consider the merits of the defendant's claim of ineffective assistance of counsel.

It is well established that the standard for determining whether a defendant has received effective assis-

tance of counsel at trial or a death penalty hearing has two elements: deficiency and prejudice. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (adopted by this court in *People v. Albanese* (1984), 104 Ill. 2d 504).)

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland,* 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

In a death sentence hearing, the defendant must prove that counsel's representation was deficient and that there is a reasonable probability that, but for counsel's deficient conduct, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. *People v. Hampton* (1992), 149 Ill. 2d 71, 109, citing *Strickland,* 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2069.

As his first assignment of error, the defendant contends that defense counsel failed to present evidence that defendant was indoctrinated, or brainwashed, into the Nation of Islam religion. The defendant maintains that a central tenet of that religion is a profound hatred of Caucasians. Also, the Nation of Islam religion advocates the use of violence against its enemies. According to the defendant, the fact that he was raised in the Nation of Islam religion as a child would provide meaningful mitigation for his subsequent criminal acts. Therefore, defense counsel's failure to present evidence of the effect of this religious indoctrination deprived the

defendant of his right to the effective assistance of counsel.

The defendant has failed to make the requisite showing of defense counsel's deficiency. The record demonstrates that at the sentencing hearing, the jury was made aware of the defendant's religious indoctrination into the Nation of Islam faith through the testimony of two witnesses: his sister, Ethel Grisby, and his childhood friend, Sereka Barnum. Both witnesses testified that the defendant attended Nation of Islam schools and was taught to hate Caucasian males. Barnum testified that the school that she and the defendant attended taught that the "white man was the devil, and the black man was the leader." If a Nation of Islam man murdered two white men, according to Barnum, he would receive an honor pendant to wear upon his lapel. In closing argument, defense counsel pointed out that the defendant had been indoctrinated into the Nation of Islam religion, and that its extreme teachings may have been responsible for the defendant's subsequent criminal activities. The jury was presented with sufficient information of the defendant's religious background. Accordingly, we reject the defendant's claim that defense counsel was ineffective because he failed to present evidence of the deleterious effects of this religious indoctrination.

The defendant next faults defense counsel for his failure to present the testimony of numerous witnesses who would have provided meaningful mitigation evidence. In his post-conviction petition, defendant included the affidavits of several individuals, including his former spouse, siblings, and his son, as well as two clergy members who became acquainted with the defendant while he was incarcerated. Their affidavits establish that these witnesses would have testified that defendant was a good husband, brother, and father, that he

expressed concern about members of his family, and that he had a positive attitude while incarcerated. The defendant claims that if these additional witnesses had testified, the result of the sentencing hearing would have been different.

We reject the defendant's argument that defense counsel was ineffective for failing to introduce the testimony of these witnesses. Through the testimony of defendant's sister, Ethel Grisby, the jury was informed of the positive aspects of his relationships with family members. Grisby stated that the defendant maintained close contact with his mother, siblings, and children throughout his incarceration. Similarly, Sereka Barnum testified that the defendant vigorously defended his younger siblings and often came to their rescue. Barnum also testified that the defendant helped her by providing her with advice about her family. She stated that the defendant's demeanor had changed over the years, and that he had grown into a responsible young man. The jury was adequately apprised through the testimony of these two witnesses that the defendant was devoted to family members and had a changed demeanor. Any further testimony in this regard would have been cumulative. Consequently, defense counsel's performance was not deficient.

Moreover, the defendant has failed to demonstrate that a reasonable probability existed that, had this additional testimony been introduced, the result of the sentencing hearing would have been different. Defense counsel was placed in the unenviable position of attempting to counter the overwhelming aggravation evidence presented by the State. At the time of the present murder, the defendant was serving a 1,000- to 3,000-year sentence for murdering three motorists on Interstate 57. These murders earned the defendant considerable notoriety as the "I-57 murderer." The

circumstances surrounding these I-57 murders were particularly egregious. After a young couple traveling on I-57 stopped to provide roadside assistance to the defendant and his accomplices, he forced the victims to lie on the ground and then shot each of them in the back. The defendant killed the third victim by firing a shotgun into her vagina after she stopped her car on I-57 to render assistance to him. It is also notable that the defendant murdered the victim in the instant case only 11 months after he was convicted and sentenced for the I-57 murders.

The State presented further aggravating evidence suggesting that the defendant murdered a grocery store owner by shooting him in the face with a sawed-off shotgun. (Defendant was never prosecuted by the State for this offense due to a finding of no probable cause. This murder occurred prior to the I-57 murders.) The defendant had also been convicted of rape, auto theft, and armed robbery. The defendant's prison record revealed that he had been charged with stabbing three other inmates on separate occasions. In addition, the defendant accumulated over 200 disciplinary violations while he was incarcerated, including numerous violations for destroying property or creating hazardous conditions. Finally, the State presented evidence to show that the defendant played a major role in the Stateville prison takeovers that occurred in 1979.

In sum, we do not find that the defendant was denied the effective assistance of counsel where additional mitigation witnesses did not testify on his behalf. As previously discussed, the mitigating evidence that the defendant raises in his post-conviction petition was presented at the sentencing hearing through the testimony of Grisby and Barnum. More importantly, defendant has failed to show that a different result would have occurred at the sentencing hearing had this additional

testimony been introduced, especially when we consider the overwhelming aggravating evidence presented by the State.

The defendant next claims that his attorney at the sentencing hearing was ineffective because he failed to investigate and present evidence that the defendant may have suffered from organic brain damage. In a related argument, the defendant claims that the trial court erred in dismissing the post-conviction petition without having first allowed his request for the appointment of a psychological expert. Lastly, defendant contends that his indigent status precluded him from obtaining an independent psychological examination in violation of his constitutional rights.

Because these issues rely upon the same premise, we will discuss them together. In his post-conviction petition, the defendant submitted the affidavit of Dr. Charles Schoengrund. Dr. Schoengrund stated that he had been briefly apprised of certain facts about the defendant's childhood and adolescence, and the teachings of the strict tenets of the Nation of Islam religion. He stated that the defendant's exposure to those beliefs as a child was akin to child abuse and could potentially warp an individual's development. He had also been informed that the defendant had received two or three serious head injuries during his formative years. Dr. Schoengrund opined that an individual who has suffered head trauma may have organic brain damage that could affect his cognitive and affective functioning. Therefore, the defendant may be more susceptible to religious indoctrination.

The defendant submitted affidavits written by his mother and brother that chronicled numerous head injuries he had allegedly suffered throughout his youth. The affidavit submitted by the defendant's ex-wife stated that the defendant suffered from headaches. Aside from

these affidavits, however, there was no further medical documentation available to support the numerous head injuries allegedly sustained by the defendant.

We are not persuaded by the defendant's argument that defense counsel's failure to investigate or present evidence of organic brain damage amounts to ineffective assistance of counsel. Nor do we find that a psychiatric examination was necessary to resolve whether his alleged head injuries caused organic brain damage. There is no evidence to suggest that defense counsel was aware at the sentencing hearing that the defendant may have suffered organic brain damage. The defendant never made any claim that he was mentally ill or insane at the time of the victim's murder.

In *People v. Stewart* (1984), 101 Ill. 2d 470, 490, this court determined that there are valid reasons for mental examinations in some cases. For example, an examination may show that a defendant acted under extreme mental disturbance, that there are nonstatutory mitigating factors involving the defendant's character or personality, and that a defendant has rehabilitative potential. (*Stewart*, 101 Ill. 2d at 470.) Nevertheless, there must be, in the discretion of the judge, some indication that evidence of these mitigating factors and rehabilitative potential might be present before an examination will be ordered. (*Stewart*, 101 Ill. 2d at 490.) The defendant in *Stewart* had not placed his mental condition at issue, and even his own witnesses had not indicated that he had ever had any mental problems. This court held, therefore, that the trial court did not err in denying his request for a psychiatric examination.

In *People v. Henderson* (1990), 142 Ill. 2d 258, 343, this court again rejected the defendant's claim that trial counsel was ineffective for failing to order a full psychiatric examination for the defendant. There, a social

worker had prepared a report that suggested that defendant's troubled upbringing and relationship with his mother may have provided the catalyst for his anger toward women that resulted in the egregious crime committed against the victim. In her evaluation, the social worker recommended that a thorough psychiatric examination be conducted to explore the possible psychological trauma that the defendant may have suffered because of his upbringing. The defendant, however, had not raised an insanity defense, nor did he attempt to show that he was suffering from any mental illness. This court found that defense counsel was not ineffective for failing to seek appointment of a psychiatrist in order to determine "precisely" the extent of the "psychological trauma" that the defendant had suffered while growing up. *Henderson*, 142 Ill. 2d at 343.

Here, as in *Stewart* and *Henderson*, the defendant never placed his sanity at issue at the sentencing hearing. We are unimpressed by the defendant's speculation that a psychological examination would have yielded significant mitigation evidence. The defendant's reliance upon Dr. Schoengrund's affidavit is misplaced, particularly when we consider that Dr. Schoengrund had never examined the defendant. A sentence will not be vacated on speculation of what a mental examination may have revealed, when the defendant failed to raise the issue of his mental condition. (*People v. Peeples* (1993), 155 Ill. 2d 422, 490.) Accordingly, we do not find that defense counsel was ineffective for failing to investigate or present evidence of organic brain damage, or that the trial court abused its discretion by denying the defendant's request for a psychological examination. Therefore, the defendant's argument that his indigent status precluded him from obtaining a psychological examination must also fail. A psychological examination was simply not warranted under the circumstances of this case.

As a final matter, the defendant launches a general attack against trial counsel's sentencing tactics. He contends that defense counsel was ineffective because he did not follow a coherent strategy in presenting mitigating evidence to the sentencing jury. He also argues that defense counsel's theories in mitigation were inconsistent.

When reviewing a claim of ineffective assistance, this court must accord much deference to defense counsel's judgment and must indulge a strong presumption that counsel's conduct "falls within the wide range of reasonable professional assistance." (*Strickland,* 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.) As cautioned by the Supreme Court in *Strickland,* "[i]ntensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client." (*Strickland,* 466 U.S. at 690, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066.) Application of these principles to the instant case leads to the conclusion that defendant has failed to demonstrate that defense counsel was ineffective.

Defense counsel elected not to pursue a sentencing strategy that may have been speculative and lacked corroborating evidence other than testimony from defendant's immediate family members. He focused instead on the murder of the victim, Hippie Morgan. Defense counsel attempted to show that the defendant committed this murder while he was in prison because of the deplorable living conditions under which he was forced to live. Defense counsel called inmate William Bracey to testify that the defendant received unfair treatment by the prison guards while he was incarcerated at Menard. Bracey also testified concerning the racial prejudice shown to the African-American prisoners, and particu-

larly to the defendant, by the predominately Caucasian prison guards. Inmate William Jones stated that the prison guards appeared to have tampered with the defendant's food. Jones' privileges were restricted because of his association with the defendant. Defense counsel also called inmate Walter Stewart, who testified that Menard officials had knowingly placed the defendant and another inmate in a possibly volatile situation that culminated in the defendant's stabbing that inmate.

Defense counsel attempted to portray that the defendant's actions were the desperate acts of a prison inmate who had been subjected to maltreatment by the prison authorities. We cannot fault defense counsel for selecting this approach rather than attempting to develop an obscure or speculative theory to explain the defendant's violent history.

It is not a reviewing court's place to lightly second-guess trial counsel's judgment. (*Hampton*, 149 Ill. 2d at 109.) The defendant has failed to show a reasonable probability that the jury would have reached a different decision had defense counsel employed another strategy at the sentencing hearing. Accordingly, we find that none of the alleged strategical errors made by defense counsel at the sentencing hearing, either separately or taken as a whole, establish that the defendant was denied the effective assistance of counsel as guaranteed by the sixth amendment.

### B. *Jury Instructions*

The defendant next asserts that he was denied the effective assistance of counsel at sentencing where defense counsel failed to object to the judge's instruction that the jury could not consider sympathy, race, or religious beliefs. The jury was instructed that: "Neither sympathy nor prejudice should influence you. You should not be influenced by a person's race, color, religion or national ancestry." The defendant believes

that, as a result of counsel's failure to object to the sympathy instruction, the jury was instructed to disregard mitigation evidence concerning the fact that the defendant was raised in the Nation of Islam religion.

The State points out that the defendant's failure to raise this issue on direct review results in waiver. Issues that could have been raised on direct appeal but were not will not ordinarily be considered in a post-conviction proceeding. (*People v. Collins* (1992), 153 Ill. 2d 130, 135; *People v. Ruiz* (1989), 132 Ill. 2d 1, 9.) Because the defendant further argues that appellate counsel was ineffective for failing to raise this issue on direct appeal, however, we address the merits of this argument.

At the outset, we note that this court has repeatedly upheld the constitutionality of the jury instruction at issue. (See *Stewart*, 104 Ill. 2d at 494; *People v. Franklin* (1990), 135 Ill. 2d 78, 112-13; *People v. Spreitzer* (1988), 123 Ill. 2d 1, 43; *People v. Del Vecchio* (1985), 105 Ill. 2d 414, 445.) The defendant argues, nonetheless, that this sympathy instruction was improper under the circumstances of this case because it forbade the jury from considering the defendant's religious beliefs as mitigating evidence.

In *People v. Bean* (1990), 137 Ill. 2d 65, this court rejected the argument that the sympathy instruction caused the jury to disregard mitigating evidence that the defendant introduced regarding the defendant's character and background. The *Bean* court applied the directive set forth by the Supreme Court in *California v. Brown* (1987), 479 U.S. 538, 541, 93 L. Ed. 2d 934, 939, 107 S. Ct. 837, 839. The Supreme Court explained in *Brown* that whether or not a jury instruction is constitutional depends upon how a reasonable juror could have understood the instruction. (*Brown*, 479 U.S. at 541, 93 L. Ed. 2d at 940, 107 S. Ct. at 839.) In determining how a reasonable juror could have understood the instruc-

tion, a court has to focus first on the particular instruction challenged; if that is found to be unconstitutional, then the court is to focus on "the instructions as a whole to see if the entire charge delivered a correct interpretation of the law." (*Brown*, 479 U.S. at 541, 93 L. Ed. 2d at 940, 107 S. Ct. at 839.) Applying the standards enunciated in *Brown* to the sympathy instruction together with other instructions tendered to the jury led this court to conclude that it passed constitutional muster. See *Bean*, 137 Ill. 2d at 128-29 ("a reasonable juror interpreting all of the instructions as a whole would disregard the emotion of sympathy in general when sentencing defendant, yet would consider defendant's evidence in mitigation and base the sentencing decision in part on that evidence and any feelings of sympathy or mercy it elicited in that juror's heart or mind").

As previously discussed, two witnesses testified at the sentencing hearing as to the defendant's training in the Nation of Islam religion. During closing argument, defense counsel argued that the defendant was taught some very extreme Nation of Islam theories as a child, and that these theories may have played a role in his subsequent criminal activities. Also, the jury was instructed that it could consider "any mitigating factors that are relevant." The court defined "mitigating factors" as "any other facts or circumstances that provide reasons for imposing less than the most severe sentence."

A reasonable juror interpreting all of the instructions as a whole would understand that he or she could consider any relevant mitigating evidence in the defendant's background. Thus, defense counsel was not ineffective for failing to object to the disputed instruction. Accordingly, we reject the defendant's argument that appellate counsel was deficient for failing to raise this issue on direct review.

In his next claim, the defendant argues that he was denied the effective assistance of counsel and other constitutional protections because his attorney failed to request an instruction concerning the natural life alternative to the death penalty. Where a defendant has previously been convicted of murder, or is found guilty of murdering more than one victim, the court shall sentence the defendant to a term of natural life imprisonment. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1)(c).) Because the defendant in this case had been convicted of the three I-57 murders, the only alternative to a death sentence was natural life.

The defendant submits in his post-conviction petition the affidavits of three jurors who indicate that they may have altered their decision had they been informed that the only alternative to the death penalty was natural life imprisonment. The jurors were polled following the verdict. The jurors who submitted the affidavits at issue each indicated that he or she found no mitigating factors sufficient to preclude the imposition of the death sentence. It is well established that a statement by a juror taken after the jury has rendered its verdict, has been polled in open court, and has been discharged will not be admitted to impeach a juror's verdict. (*People v. Cabrera* (1987), 116 Ill. 2d 474, 491; *People v. Preston* (1979), 76 Ill. 2d 274, 288-89.) Therefore, the jurors' affidavits do not assist the defendant's position in this regard.

The State argues that this issue is waived because appellate counsel failed to raise it on direct review. However, we address this claim in view of the defendant's subsequent argument that defense counsel's failure to object to this instruction deprived him of effective assistance of counsel.

The sentencing hearing in this case took place in 1986. At that time, Illinois law did not require that a

jury be instructed on the alternative mandatory sentence of natural life. (*People v. Albanese* (1984), 102 Ill. 2d 54, 81.) In *People v. Gacho* (1988), 122 Ill. 2d 221, 260, this court held that this instruction applies prospectively only. Thereafter, in *Spreitzer*, 123 Ill. 2d 1, this court also held that the failure of defense counsel to tender such an instruction was not incompetent, for the obvious reason that the trial court could properly have refused such an instruction prior to *Gacho*. The defendant offers no compelling reasons to disturb this line of case law.

## Perjured Testimony

The defendant claims that he was denied due process by the State's knowing use of the perjured testimony of witness Hosie Baynes. However, defendant failed to raise and argue this issue in his post-conviction petition. Pursuant to section 122—3 of the Act, any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived. Ill. Rev. Stat. 1987, ch. 38, par. 122—3.

For the reasons stated, we do not find that the trial judge's decision was manifestly erroneous where he dismissed the defendant's post-conviction petition without an evidentiary hearing. Accordingly, we find that the circuit court of Will County properly denied the defendant's petition for post-conviction relief.

## Constitutionality of the Illinois Death Penalty Statute

As a final matter, the defendant challenges the constitutionality of the Illinois death penalty statute. Specifically, the defendant argues that the death penalty statute is unconstitutional because it does not sufficiently minimize the risk of arbitrarily or capriciously imposed death sentences. This issue was rejected on direct appeal (*Brisbon*, 129 Ill. 2d at 223-24) and in other cases (*Spreitzer*, 123 Ill. 2d at 44; *People v. Ashford*

(1988), 121 Ill. 2d 55). The defendant offers no persuasive reason to reexamine this issue.

The defendant's last argument posits that the Illinois death penalty statute is violative of the eighth and fourteenth amendments because it places a burden of proof on the defendant which precludes meaningful consideration of mitigation. This argument has also been considered and rejected by this court. (*Bean*, 137 Ill. 2d at 138; *People v. Whitehead* (1987), 116 Ill. 2d 425, 465.) We decline the defendant's invitation to revisit those holdings.

Accordingly, we find no merit to the defendant's challenges to the constitutionality of the Illinois death penalty statute.

## CONCLUSION

For the reasons stated, the judgment of the circuit court of Will County is affirmed. The clerk of this court is directed to enter an order setting Wednesday, May 17, 1995, as the date on which the sentence of death entered in the circuit court is to be implemented. The defendant shall be executed in the manner provided by law (Ill. Rev. Stat. 1991, ch. 38, par. 119—5). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, the warden at Stateville Correctional Center, and the warden of the institution wherein the defendant is confined.

*Affirmed.*

JUSTICE HARRISON, dissenting:

The majority's discussion of the Post-Conviction Hearing Act (Ill. Rev. Stat. 1989, ch. 38, par. 122—1 *et seq.*) overlooks one important qualification. Section 122—2.1 of the statute (Ill. Rev. Stat. 1989, ch. 38, par. 122—2.1) explicitly differentiates between situations where the petitioner is under a sentence of death and those where he is sentenced to a term of imprisonment

for the conviction he is challenging. The provision for summary dismissal of a petition that is "frivolous or is patently without merit" applies, by its terms, only in the latter case, namely, where the petitioner has been sentenced to imprisonment. (Ill. Rev. Stat. 1989, ch. 38, par. 122—2.1(a)(2).) It is inapplicable where, as here, the petitioner is under a sentence of death.

Because the petition in this case was not subject to the summary dismissal provision, the Act required the circuit court to order the petition to be docketed for further consideration in accordance with sections 122—4 through 122—6 (Ill. Rev. Stat. 1989, ch. 38, pars. 122—4 through 122—6). (Ill. Rev. Stat. 1989, ch. 38, par. 122—2.1(b).) That was not done. Instead, the circuit court dismissed the petition *sua sponte* without an evidentiary hearing and without the State even having filed a motion to dismiss. This failure by the court to comply with the mandatory provisions of the statute rendered the dismissal of the petition void. (See *People v. Porter* (1988), 122 Ill. 2d 64, 86.) Because the dismissal was void, the judgment of the circuit court should be vacated, and the cause should be remanded for further proceedings as required by sections 122—4 through 122—6 of the Act. I therefore dissent.