(No. 88663.

THE PEOPLE OF THE STATE OF ILLINOIS, Appel-
lee, v. DOROTHY WILLIAMS, Appellant.

*Opinion filed June 20, 2002.*

HARRISON, C.J., and KILBRIDE, J., concurring in part and dissenting in part.

Frank Ralph, Assistant Defender, and Kenneth N. Flaxman, of the Office of the State Appellate Defender, of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Assistant Attorney General, of Chicago, and Renee Goldfarb and Celeste Stewart Stack, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

In the circuit court of Cook County a jury convicted defendant, Dorothy Williams, of the robbery and murder of Mary Harris. Defendant waived a jury for sentencing. The court found defendant eligible for the death penalty, concluded that there were no mitigating factors sufficient to preclude imposition of the death penalty, and sentenced defendant to death. This court affirmed defendant's convictions and sentence (*People v. Williams*, 164 Ill. 2d 1 (1994)), and the United States Supreme Court denied *certiorari* (*Williams v. Illinois*, 515 U.S. 1136, 132 L. Ed. 2d 818, 115 S. Ct. 2566 (1995)).

In June 1995, petitioner filed a petition with the aid of counsel pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 1994)). Counsel subsequently filed an amended petition and two amendments to the amended petition. The court dismissed the final version of the petition on the State's motion. Petitioner appeals. We reverse and remand.

## BACKGROUND

### Conviction and Sentence

The facts underlying petitioner's convictions and sentence were set out in this court's opinion on direct appeal (*Williams*, 164 Ill. 2d 1), and we will not repeat them in detail here. Defendant was convicted of the murder of 97-year-old Mary Harris and the theft of the victim's stereo. The evidence included petitioner's signed confession to the crime. After petitioner waived a jury for

sentencing, the court found petitioner death-eligible beyond a reasonable doubt, based on the murder having been motivated by robbery. The case then proceeded to the aggravation/mitigation phase.

In aggravation, the State introduced evidence that petitioner had murdered not only Harris, but had also murdered two other elderly victims and had committed various other crimes against elderly victims. Petitioner was often physically abusive of her elderly robbery victims. The State also adduced evidence of other occasions on which petitioner exhibited aggressive, violent behavior.

In mitigation it was brought to the court's attention that petitioner had no disciplinary violations during her pretrial incarceration other than one incident in which she was verbally abusive and verbally threatening to a correctional officer. Petitioner's mother testified that she and petitioner's father had separated shortly before petitioner's birth, and as a result, petitioner's contact with her father "had been limited essentially to 'writing' " before he died, four years prior to the hearing. *Williams*, 164 Ill. 2d at 26. At the time of the hearing defendant had two children. One of the fathers had died in 1978 and there was testimony that the father of the other child provided no support for his child. Petitioner's daughter testified that petitioner had raised her two children and treated them well.

The trial court found that " 'the matters in aggravation so far exceed the matters in mitigation as to reduce the matters in mitigation to insignificance,' " and sentenced petitioner to death. *Williams*, 164 Ill. 2d at 26.

## Post-Conviction

Petitioner's counsel filed her first post-conviction petition in June 1995. Therein, petitioner alleged that she suffered from a "serious neurological deficit" during and before trial, and had not been competent to stand

trial, stating specifically that she had not been competent to make a voluntary statement to the police (her confession), to cooperate with counsel, to waive a jury for sentencing, or to be sentenced. Petitioner contended that trial counsel was ineffective for failing to discover her mental deficits, and that her deficits had been masked by medication administered to her during her pretrial and trial incarceration at the Cook County jail.

This petition was supported by the affidavit of Caryn Tatelli, a social worker employed as a mitigation specialist by the Capital Resource Center. Tatelli stated that petitioner claimed to have a blood clot in her brain resulting from an auto accident at age 12. According to petitioner, the blood clot was related to a visible lump above petitioner's left eyebrow. Tatelli confirmed the existence of the lump, and stated that it "varies in size, depending on the day *** [and] felt like a very deep blister." Petitioner reported migraine headaches and occasionally experienced severe headaches, dizziness and nosebleeds. Tatelli reported that petitioner told her that "she has trouble understanding things which are said to her and things which she reads," stating further that she "easily and quickly forgets what she has read, and that she read and signed documents pertaining to her trial, but that she did not understand what she was reading and signing."

In August 1995, petitioner, through counsel, moved that petitioner be examined for fitness to proceed with the post-conviction action. Petitioner attached two affidavits to the motion. In the first, petitioner's counsel averred that he had some doubt of petitioner's ability to understand and communicate with him. The second affidavit was sworn out by Dr. Linda Wetzel, a psychologist. Dr. Wetzel performed several tests to establish petitioner's level of intellectual function. She concluded that petitioner was "experiencing the long term effects

of a closed head injury, incurred at age 11, which have diminished her intellectual level to the mentally retarded level. She is significantly limited in her capacity to understand or remember the explanations or instructions of her lawyer." Dr. Wetzel recommended that petitioner be given a CAT scan and MRI in order to better quantify her head injury.

On petitioner's motion, the court ordered an evaluation of petitioner's fitness to participate in post-conviction proceedings. Discovery on this issue lasted for nearly three years. During this time petitioner was examined and her fitness was evaluated by several professionals, both psychologists and psychiatrists. Finally in May 1998 the court commenced the hearing on petitioner's fitness for purposes of post-conviction proceedings.

At the May 1998 hearing the assistant State's Attorney stated for clarification that it was the understanding of the State that the only issue to be addressed in that hearing was petitioner's competency for purposes of post-conviction proceedings. The court noted that it "hoped we were going to go into the hearing itself if she was found competent. If not, of course, we wouldn't." During opening remarks the assistant State's Attorney reiterated that

> "I'd like the record to be clear that at this stage in the proceedings we are still doing the fitness hearing.
>
> THE COURT: Yes.
>
> [Assistant State's Attorney]: And we have not and can not address any of the issues in the post conviction petition or file an answer or motion to dismiss until we determine whether petitioner is competent to even sit through these proceedings. So today we will start the fitness hearing for post-conviction proceedings with Dr. Mathew Markos and Dr. Ed Blumstein."

Three witnesses testified for the State at the hearing. Dr. Mathew Markos, clinical director of Forensic Clinical Services for the Circuit Court of Cook County, and Dr. Edward Blumstein, chief psychologist for the adult divi-

sion of Forensic Clinical Services for the Circuit Court of Cook County, both testified that petitioner was fit for purposes of post-conviction proceedings. Each admitted that in 1995 he had reached the opposite conclusion, but the witnesses explained that because of additional information they had received in the interim, they now believed that petitioner was fit, but was malingering— attempting to make her symptoms appear more severe than they actually were.

During the hearing Dr. Markos testified that when he examined petitioner in 1997, she was taking Pamelor, a psychotropic antidepressant. In response to a hypothetical question, Dr. Markos testified that he did not believe that a 50-milligram-per-day dose of Sinequan would interfere with petitioner's fitness to participate in post-conviction proceedings. He testified that 50 milligrams is "not a heavy dose." He testified that the Pamelor petitioner was ingesting at the time that he examined her was chemically very similar to Sinequan, and that she was fit while receiving that medication. When the State asked Dr. Markos whether petitioner's ability to cooperate with counsel in post-conviction proceedings would have been affected by a 150-milligram dose of Sinequan, he responded that 150 milligrams was an antidepressant level dose, and so could alleviate some symptoms of depression. However, 150 milligrams was "well within the therapeutic range," and it would not "make any significant changes with respect to her fitness." When counsel for petitioner attempted to inquire regarding the effects of a 200-milligram dose of Sinequan, the court sustained the State's objection.

The court recessed the hearing, ordering the parties to obtain records of the medications petitioner was currently ingesting and ordering Dr. Markos to examine petitioner to determine whether any psychotropic medication she was ingesting could have any impact on

her fitness to engage in post-conviction proceedings. Dr. Markos examined petitioner and concluded that the only psychotropic medication she was currently ingesting, a 50-milligram dose of Pamelor, would not adversely affect her fitness to continue with post-conviction proceedings. He opined that such a dosage level suggested it was being administered as a sedative, because the usual antidepressant therapeutic dosage was "much higher," from 100 or 150 to 250 milligrams daily. Dr. Markos testified that the other medications petitioner was ingesting—insulin, naproxen, and Depakote—were nonpsychotropic. When counsel for petitioner asked if Dr. Markos had examined any records relating to "medication that [petitioner] received at the time of her trial" the court sustained the State's objection, reminding counsel that the hearing "is now only on competency today. That is the purpose of this particular hearing now."

The State's other expert was Dr. Calvin Flowers, a radiologist. Dr. Flowers reviewed a CAT scan and MRI examination which had been performed on petitioner and testified that both tests returned normal results. The CAT scan was "essentially a normal examine [sic]," with no evidence of acute hemorrhage, no masses, and no abnormal calcification. On the MRI, Dr. Flowers did identify several "high signal or unidentified bright objects in the brain," but he stated that such results would return in 3 or 4 out of every 10 MRI tests administered, and to him they "signify nothing great in terms of abnormalities." Nothing in the CAT scan or the MRI was indicative of any brain injury. He testified that if a patient had received a traumatic brain injury of sufficient significance to cause cognitive dysfunction, there should be residual effects that could be observed in a CAT scan or MRI. He saw no such effects on petitioner's tests; he also saw no evidence of any fractures, current or healed. The absence of any indications on the tests led

Dr. Flowers to conclude that petitioner had not received a traumatic brain injury in the past.

Final arguments on the issue of petitioner's mental competency to engage in post-conviction proceedings were scheduled for March 1999. During argument, petitioner's counsel stated that petitioner had demonstrated the ability to communicate with counsel. Accordingly, petitioner argued, no further proceedings on fitness were necessary, and proceedings on the petition itself should begin. The court found petitioner fit to engage in post-conviction proceedings and allowed petitioner to amend her petition.

Petitioner filed an amended post-conviction petition in June 1999, and filed "amendment[s] to amended post-conviction petition" in June and August 1999, providing additional factual allegations. Petitioner attached two documents to her August 1999 amendment. The first was a set of photocopies of physicians' orders and prescription orders which purported to indicate the dates upon which petitioner was prescribed various dosages of medications while incarcerated during trial. The second document was captioned "Affidavit of John Williams." The first paragraph of the document stated that "[t]he undersigned, under penalties of perjury as provided by law, certifies that the following statements are true," and the document was signed on the last of three pages. In the body of the document, Williams stated that he was petitioner's brother, and averred that petitioner never graduated from grammar school or attended high school; that petitioner was illiterate; that petitioner had been using heroin and cocaine since she was 14 years old; and that petitioner was taken to a hospital in an ambulance after she was hit by a car when she was 11 years old.

In its final version, all of the claims in the petition were allegations of ineffective assistance of trial counsel: (1) for failing to discover and call to the court's attention

the fact that petitioner was mentally incompetent to stand trial; (2) for failing to raise the issue that petitioner was ingesting psychotropic medication at the time of trial and to move for a competency hearing on that basis; (3) for failing to move to suppress petitioner's confession on the basis that petitioner was illiterate and mentally deficient, and thus could not have knowingly waived her *Miranda* rights; and (4) for failing to raise petitioner's mental deficiency as a mitigating factor at sentencing.

The State moved to dismiss. In August 1999, the circuit court granted the State's motion. In a detailed ruling from the bench—spanning some 33 pages of transcript—the court explained its rejection of each of the claims raised in the final version of the petition and dismissed the petition in its entirety. At the beginning of its ruling, the court stated that in addition to the hearing on petitioner's post-conviction competence, "[a]n evidentiary hearing was held on the allegations as to petitioner's competency at time of trial." At a later point during its ruling, the court restated that it "did order and conduct an extensive hearing into petitioner's mental condition at the time of the trial and for purposes of determining her mental capacity to proceed in these post conviction proceedings as well." In its conclusion, the court ruled:

> "One, the various pleadings, the attachments thereto and the post conviction hearing before me, taken in the light of the entire record, do not make a substantial showing, indeed do not make any showing that trial counsel was ineffective.
> \*\*\*
> Two, the evidence is that petitioner was at all times competent to stand trial. Accordingly, post conviction relief is denied."

Following the court's ruling, counsel for petitioner spoke, stating in part that he took

> "exception to your Honor's on [*sic*] hearing on present competency as a post conviction hearing.

I think the record reflects that there was no post conviction hearing. I think the record also reflects that when I tried to inquire at the competency hearing of Dr. Markos about the effective, [*sic*, likely should be 'effect of'] 200 milligrams of Sinequan at the time of trial. An objection was made.

THE COURT: I sustained the objection because there was no evidence to support the question. But the record of the proceedings clearly, clearly point out that I had said as long as we were going into competency, now we were also going into competency at time of trial. The only reason I sustained the objection is, there was no evidence of any 200 grams [*sic*] of any medication."

The court curtailed counsel's further urgings of his recollection of matters.

Petitioner moved to reconsider, attaching an affidavit from Dr. James O'Donnell to the effect that his review of petitioner's medication records indicated that petitioner was receiving 200 milligrams per day of Sinequan during the time of trial. The circuit court denied petitioner's motion and petitioner appealed. Because petitioner is under a death sentence, her appeal lies directly to this court. 134 Ill. 2d R. 651(a).

Several arguments are raised before this court, both procedural and substantive. One of the parties' disagreements constitutes a threshold issue, of sorts. That is, whether the circuit court acted correctly in basing its dismissal of the petition in part upon the information adduced at the hearing on fitness to participate in post-conviction proceedings. We find that reversal is necessitated on this issue, because the circuit court unacceptably blurred the lines between the hearing on fitness for purposes of post-conviction proceedings and an actual hearing on the fitness question raised in the substance of the post-conviction petition. Accordingly, we need not reach the other issues discussed by the parties.

## ANALYSIS

The Post-Conviction Hearing Act (Act) (725 ILCS

5/122—1 *et seq*. (West 1998)) provides a remedy to criminal defendants who claim that a substantial violation of their federal or state constitutional rights occurred at the proceedings which resulted in their convictions, when such a claim has not been, and could not have been, adjudicated previously. *People v. Griffin*, 178 Ill. 2d 65, 72-73 (1997); *People v. Brisbon*, 164 Ill. 2d 236, 242 (1995). A proceeding under the Act is not an appeal; it is a collateral attack on the prior judgment. *Brisbon*, 164 Ill. 2d at 242. Issues that were decided on direct appeal are barred by the doctrine of *res judicata*, and issues that could have been raised on direct appeal, but were not, are deemed waived. *People v. Towns*, 182 Ill. 2d 491, 502-03 (1998); *Griffin*, 178 Ill. 2d at 73.

A petitioner is not entitled to an evidentiary hearing as a matter of right. Rather, a hearing will be held only where the allegations of the petition, supported by the trial court record and accompanying affidavits, make a substantial showing of a violation of a constitutional right. *People v. Hobley*, 182 Ill. 2d 404, 427-28 (1998); *Griffin*, 178 Ill. 2d at 73. In determining whether to grant an evidentiary hearing, all well-pleaded facts in the petition and affidavits are taken as true. *Towns*, 182 Ill. 2d at 503. Whether the allegations in a post-conviction petition are sufficient to require an evidentiary hearing is reviewed *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 388-89 (1998).

A defendant is presumed to be fit to stand trial, to plead, and to be sentenced. 725 ILCS 5/104—10 (West 1998). A defendant is also presumed to be fit at the time of post-conviction proceedings. See *People v. Owens*, 139 Ill. 2d 351 (1990). When a *bona fide* doubt of a defendant's fitness to proceed with post-conviction proceedings is raised, the court may order a psychological evaluation of the defendant and consider the matter at an evidentiary hearing. *Owens*, 139 Ill. 2d at 365.

The issue here is not a challenge to the trial court's initial determination that there existed a *bona fide* doubt of petitioner's fitness to proceed with the post-conviction action, nor the court's ultimate determination that she was fit to proceed. Petitioner challenges neither ruling on appeal, and it would be difficult indeed for her to do so, as she requested both rulings.

Rather, petitioner urges that it was improper for the trial court to consider the evidence and testimony adduced at the post-conviction fitness hearing in dismissing the post-conviction petition on the merits. Petitioner contends the court was prohibited from considering anything other than the original trial record and the petition and any materials attached thereto. The State responds that in ruling on motions to dismiss post-conviction proceedings this court permits trial courts to consider evidence adduced at trial "or other proceedings." The State argues moreover that there is no reason to preclude the court from considering evidence adduced in post-conviction proceedings which was so precisely relevant to the issues raised in the petition.

We need not determine whether in another case it might be appropriate for a circuit court to consider evidence adduced at a hearing on post-conviction fitness in dismissing a post-conviction petition. In the unique circumstances of this case, the court acted improperly. The court precluded post-conviction counsel from inquiry regarding the time of trial. For instance, the court specifically barred counsel from cross-examining Dr. Markos regarding any "medication that [petitioner] received at the time of her trial" on the basis that the hearing "is now only on competency today. That is the purpose of this particular hearing now." The comments of the assistant State's Attorney make clear that it was the understanding of the State, as well, that the hearing was limited to post-conviction competency. However, when

the court ruled on the motion to dismiss it clearly operated under the misapprehension that there had been a full hearing on fitness at the time of trial. Indeed, both in its oral ruling and in the fact sheets, the court referred to the petition as having been "denied," rather than "dismissed." This cannot stand. The court cannot operate as if a hearing had been held when it had not. We intimate no view regarding the proper disposition of the petition; it is possible that ultimately petitioner will receive no relief. But the denial of her petition based on the trial court's misrecollection that a full hearing had been held is unacceptable.

## CONCLUSION

For the foregoing reasons, the decision of the circuit court dismissing the post-conviction petition is reversed. Under the unique circumstances of this case, where there appears to have been such confusion regarding the hearing on petitioner's post-conviction fitness and the motion to dismiss the post-conviction petition, we feel that the appropriate course of proceeding is for the circuit court to conduct a hearing on the merits of the post-conviction petition. The court cannot dispose of a post-conviction petition as if a hearing had been held, when the petitioner has been affirmatively precluded from introducing any proof in support of the allegations of the petition. Again, as previously noted, we intimate no view on the ultimate disposition of this case. We also reiterate that we express no opinion on whether a circuit court could take into account facts adduced at a hearing on post-conviction fitness in ruling on a motion to dismiss, if all parties were informed before the hearing on post-conviction fitness that the court might so utilize any facts adduced. The cause is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

CHIEF JUSTICE HARRISON, concurring in part and dissenting in part:

I agree with the majority's conclusion that the circuit court erred in dismissing Williams' post-conviction petition. I write separately because I would go beyond the majority's disposition and hold that Williams is entitled to immediate post-conviction relief. Regardless of the outcome of any further proceedings on remand, Williams' convictions and sentences cannot stand. That is so because she was tried, convicted and sentenced under a system of capital punishment that is fatally defective.

Our court has now adopted a comprehensive set of new rules governing the conduct of cases in which the State is seeking the death penalty. For the reasons set forth in my dissenting opinion in *People v. Hickey*, 204 Ill. 2d 585, 631-36 (2001) (Harrison, C.J., dissenting), the procedures contained in those rules are indispensable for achieving an accurate determination of innocence or guilt and are applicable to all capital cases now coming before us on review. Whether the new rules will be sufficient to place this State's capital punishment system within the tolerances permitted by the State and federal constitutions is a question we cannot yet answer. It is clear, however, that no proceeding conducted without the benefit of those rules can be deemed reliable. As a result, remanding for further proceedings on Williams' petition is unnecessary. Rather, we should grant Williams relief on the merits, set aside her convictions and sentences, and order that she be granted a new trial without further delay.

JUSTICE KILBRIDE, also concurring in part and dissenting in part:

I concur in part with the majority's judgment that the circuit court erred in dismissing the post-conviction petition. Nevertheless, I agree with Chief Justice Harrison that defendant's convictions and sentence should be

set aside because the trial proceedings were not conducted in accordance with the new supreme court rules governing capital cases. As I stated in my dissents in *People v. Hickey*, 204 Ill. 2d 585, 636-40 (2001) (Kilbride, J., dissenting), and *People v. Simpson*, 204 Ill. 2d 536, 581-85 (2001) (Kilbride, J., dissenting), I believe that the new rules should be applied retroactively. See *People v. Caballero*, 179 Ill. 2d 205, 220-21 (1997). Thus, this cause should be remanded for a new trial conducted in compliance with the new rules.