NO. 4-96-0491

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

v. ) Livingston County

DWAYNE WALKER, ) No. 95CF11

Defendant-Appellant. )

) Honorable

) Charles E. Glennon,

) Judge Presiding.

JUSTICE GREEN delivered the opinion of the court: 

Following a jury trial on March 28, 1996, defen­dant, Dwayne Walker, was found guilty of aggravated battery pursuant to section 12-4(b)(6) of the Criminal Code of 1961 (Code) (720 ILCS 5/12-4(b)(6) (West 1994)) in that he threw a liquid sub­stance on two correctional employees engaged in the execution of their official duties.  Defendant was sen­tenced to three years in the Illinois Department of Corrections (DOC) to run consecu­tive to the sen­tence he was presently serving in Fulton County case No. 92-CF-146.  Defendant appeals his convic­tion, contending (1) he did not voluntarily waive his right to be present at trial, (2) the State failed to prove the element of "physical contact" necessary to sustain a conviction for aggra­vated bat­tery, and (3) his state­ment made following the incident should not have been admis­sible.  We affirm.

Following jury selection on March 27, 1996, defendant requested to return to the Pontiac Correctional Center (Pontiac) to rest over the lunch hour because he was "hurt" and "in pain."  Defendant had a hip and lower back condition that required he stay in a wheelchair and take pain medication.  Defendant wanted to go to Pontiac so he could receive some additional pain medica­tion.  The court advised defendant it would be impossible for him to be processed in and out of Pontiac in that short of a time period, and if defendant went to Pontiac and was late coming back, he would be waiving his right to be present during the opening stages of the trial.  Defendant indicated he believed he was being punished for being ill and then stated he would just go back to the Dixon Correctional Center (Dixon) (where he was serving his present sentence).  

During lunch recess, the court contacted the medical director at Dixon and the medical doctor at Pontiac.  The court learned defendant was given powerful pain medication at Dixon to last the day of trial and that defendant had consumed all the medication that morning.  The court was advised by the Dixon medical director that defendant had received all the pain medica­tion necessary for his condition.  The court was advised by the medical doctor at Pontiac that because defendant was already given pain medication at Dixon, he would not be prescribed more at Pontiac without a full medical exam.

Upon defendant's request, the court sent defendant back to Dixon with the writ team and stated on the writ, as follows:

"[Defendant] is to be produced tomorrow morn­ing, March 28, 1996, at 9:00 a.m. for contin­uance of jury trial.  [Defendant] has chosen to go back to Department of Corrections dur­ing his jury trial.  He has a right to do that.  The trial will continue in his absence unless *** [defendant] tells prison staff on Thursday, March 28, that he wants to go to Pontiac for the rest of his trial."

The court instructed the jurors, upon their return to the courtroom, that defendant had a hip and back condition for which he was taking medication prescribed for him; however, defendant had decided to return to Dixon due to the pain and discomfort he was experiencing.  The court further stated, "[a] defendant in a criminal case has a constitutional right to be present at [his] trial.  But [he] also has a right to elect not to be present," and the defendant has chosen not to be present.  The court then instructed the jury that it should not consider defendant's absence as a factor in the case, but should make its deci­sion based on the testimony and evidence.

The next day additional evidence was presented.  Defendant did not appear.  The court readmonished the jury concerning defendant's absence.  The trial was conducted that day, and the jury returned a verdict of guilty in defendant's absence.

Section 115-4.1(a) of the Code of Criminal Procedure of 1963 (Code of Procedure) (725 ILCS 5/115-4.1(a) (West 1994)) pro­vides that "[i]f trial [has] previously commenced in the pres­ence of the defendant and the defendant willfully absents himself for two successive court days, the court shall proceed to trial."  Defendant recog­nizes the Supreme Court of Illinois stated in 
People v. Flores
, 104 Ill. 2d 40, 50, 470 N.E.2d 307, 311 (1984), that this portion of the statute governing trials 
in
 
absentia
 is permis­sive and not mandatory.  Thus, it is within the trial court's discre­tion whether to wait or proceed to trial.  Defen­dant contends that, here, because his pain prevented him from staying at the trial, he did not voluntarily absent himself from the trial.  Thus, defendant maintains the court abused its discretion in failing to continue the trial for two days pursuant to section 115-4.1(a) of the Code of Procedure.

In 
People v. Owens
, 102 Ill. 2d 145, 464 N.E.2d 252 (1984), the defendant was present during the trial and part of the sentencing proceedings but requested to be excused from that portion of the proceedings in which evidence of aggravating and mitigating factors was presented.  The court informed the defen­dant it would take the matter under advisement, but following lunch, the defendant stated he was not returning to court and indicated he did not feel well and did not want to be present.  The court proceeded without defendant being present.  The 
Owens
 court upheld the actions of the trial court, reasoning that the defendant's sixth amendment right to be present at every stage of the proceedings can be waived.  As a rule, the 
Owens
 court noted, "'where a defendant voluntarily absents himself from a court­room and refuses to be present for further proceedings[,] he is deemed to have waived his right and cannot claim any advantage on account of his absence.'"  
Owens
, 102 Ill. 2d at 157, 464 N.E.2d at 258, quoting 
People v. De Simone
, 9 Ill. 2d 522, 533,
 138 N.E.2d 556, 562 (1956).

Here, while defendant stated he wanted to be present during the trial, he placed demands on the court to ensure his presence, which would have been impossible for the court to satisfy.  Essentially, defendant wanted to be prescribed more pain medication than the doctors at both Dixon and Pontiac were willing to prescribe, at least without a full examination.  Initially, when defendant first complained of pain he failed to even inform the court that he had consumed that morning all the pain medication that was prescribed to last the day.  Given the fact that defendant was provided with adequate pain medication to get through the day, together with his clear unhappiness about having to travel several hours to court, as demonstrated at several pretrial conferences, the circuit court properly found defendant voluntarily waived his right to be present during both days of trial.

The instant case is distinguishable from 
People v. Jones
, 269 Ill. App. 3d 925, 929-30, 647 N.E.2d 612, 615-16 (1995), where this court held the trial court committed revers­ible error in failing to wait more than five minutes to proceed when the defendant was late for closing arguments.  The defendant had appeared during the trial, and there had been no attempt to locate him.  Further­more, as defendant appeared only 15 minutes late, this court concluded that a short continuance would not have been fruitless.  Here, however, the court took diligent steps to determine whether anything more could be done to make defendant comfort­able.  Moreover, a continuance of the trial would not have likely changed defendant's ability to be present, as the record demon­strates he was not likely to receive more pain medication from Dixon or Pontiac medical staff and he was not going to stay without an increase in pain medication.

Defendant next maintains the State did not prove the essential element of "physical contact" necessary to sustain a conviction for aggravated battery under section 12-3(a)(2) of the Code (720 ILCS 5/12-3(a)(2) (West 1994)).  At trial, there was no dispute defendant threw a liquid substance at a correc­tional officer and a nurse while in a segregation unit at Pontiac.  
The only factual issue in dispute was whether the substance thrown was water or urine, and, as we subsequently explain, the nature of the substance thrown would make no difference.

The State called Robert Montgomery, a correction­al officer at Pontiac, who testified that on the evening of July 17, 1994, he was escorting nurse Hammond Dieterle to the segrega­tion unit at Pontiac where defendant's cell was located to disburse medication to defendant.  Montgomery stated that on this particu­lar evening, when Dieterle put defendant's medica­tion in his hand, defendant immediately became irate and started yelling and getting belligerent because he believed his medica­tion had been changed and there was a "conspiracy to get him or to change his medication or something."  According to Montgomery, when Dieterle ex­plained to defendant that she was not in charge of issuing the medica­tion, just giving it out, defendant got very irritated, picked up a plastic cup that was sitting on the corner of his bed, reached through the cell bars, and threw it at them.  Montgomery indicat­ed the substance went mostly on him, but some of it got on Dieterle's pant leg and blouse.  When asked what Montgomery believed the substance to be, he stated he believed it was urine.  Montgomery stated it could have been water, but he did not think so because it left stains on their clothing and smelled bad.

Officer Montgomery identified People's exhibit No. 3 as the incident report he prepared immediately after the alterca­tion.  The incident report indicated defendant's statement as he was throwing the substance was "[w]hy are you doing this shit to me, you bitch" and that "he was going to get her."  The report also indi­cat­ed defen­dant threatened Mont­gom­ery not to "step in front of [his] cell," and that he was going to save up every­thing for Montgomery and the other officers, which Montgom­ery be­lieved to mean "feces," "puke," "piss" and everything.

The State also called Lieutenant David Johansen, a super­vi­sor with DOC, who testified that, after he learned defen­dant had thrown a substance on Montgomery and Dieterle, he proceeded to "strip out" defendant's cell to temporarily take away his person­al belongings.  According to Johansen, defendant became angry and threatened to throw "piss and shit" on any officer or employee that walked past his cell.  Richard Irvin, a chief investigator at Pontiac, testi­fied defendant told him nurse Dieterle had made "racial comments ­toward him, and that she [had] been messing with his medication.  And then he said he threw some water on her."

The defense then called Frederick Walker, an inmate in  the segregation unit at Pontiac on the day in question.  Walker stated that at around 5:30 on July 17, 1994, (1) he was one cell over from defendant; (2) nurse Dieterle came to defendant's cell with his medication and a small cup of water to drink his medica­tion with; (3) Dieterle and defendant got into an argument as to whether defendant had actually taken his medication; and (4) defendant became angry and threw the cup of water in Dieterle's face.  Walker indicated he had prepared an affidavit as to what he saw upon defendant's request.

The next inmate for the defense was Byron Hanna.  Hanna stated that on the day in question (1) he was an inmate in the segregation unit at Pontiac; (2) his cell was next door to defendant's cell; (3) nurse Dieterle stopped at defendant's cell to give him his medication; (4) the next thing he knew, they started arguing with one another; (5) defendant told Dieterle to get away from his cell; and (6) he saw some water go out of the cell.  When Hanna was asked how he knew it was water, he indicat­ed defendant was in a wheelchair and he did not think Dieterle would stand there and wait around while defendant urinat­ed in a cup so he could throw it at her.  Hanna identified People's exhibit No. 4 as the affidavit he prepared as to what happened.

The last witness for the defense was Gene Arnett, another inmate in the segregation unit at Pontiac.  Arnett stated he (1) was three cells down from defendant, (2) heard defendant arguing with nurse Dieterle, and (3) saw "something" come out of defendant's cell through his mirror.  Arnett also testified that approximately five minutes after the incident he "overheard" Dieterle tell the lieutenant she did not need to change clothes because it was only water and would dry.  

In rebuttal, Officer Montgomery stated after the inci­dent he called on the radio to the "cage," and they informed the lieuten­ant he and Dieterle had a problem.  Montgomery also stated he and Dieterle finished their rounds in the segre­ga­tion unit, and Dieterle told him she thought defendant had thrown urine on them and she was going to go back and change.  Later, Montgom­ery went to the medical unit to confer with Dieterle and to have a blood test, and Dieterle had already scrubbed down with bleach and changed into her "hospital blues."  Montgomery then also scrubbed down with bleach and was blood tested.  Montgom­ery testified he did not have a conversa­tion with Lieutenant Johansen during that time period.

Battery is defined as when a person "knowingly without legal justification and by any means *** (2) makes physical contact of an insulting or provoking nature with an individual."  720 ILCS 5/12-3(a)(2) (West 1994).  Here, defendant was charged with aggra­vated battery because he had committed battery upon correc­tion­al employees engaged in their official duties.  720 ILCS 5/12-4(b)(6) (West 1994).

Essentially, defendant contends the throwing of a liquid substance cannot amount to "physical contact" within the meaning of section 12-3(a)(2) of the Code.  Apparently, defen­dant contends there must be some kind of direct touching for physical contact to occur.  We disagree.

Initially, we conclude the evidence was sufficient for the jury to find that defendant threw urine, not water, on Montgomery and Dieterle.  We further conclude the throwing of urine, or water, onto another under these circumstances amounts to "physi­cal contact of an insult­ing or provoking nature" (720 ILCS 5/12-3(a)(2) (West 1994)).  

The instant case is analogous to 
People v. Peck
, 260 Ill. App. 3d 812, 814, 633 N.E.2d 222, 223 (1994), where this court held that there, spitting in the face of a police officer amount­ed to aggra­vated battery.  In so holding, this court noted that section 12-3(a)(2) of the Code specifically defined battery as physical contact "by any means" that is sufficiently "in­sulting or provok­ing."  720 ILCS 5/12-3(a)(2) (West 1994).  Further, this court recognized that the committee comments to section 12-3 of the Code referred to "spitting in prosecuting witness' face" as an act that supported an aggravated battery convic­tion in light of the "by any means" language.  720 ILCS Ann. 5/12-3, Committee Com­ments--1961, at 250 (Smith-Hurd 1993).

Here, defendant contends that, because the committee comments list only spitting in the face as physical contact "by any means," other than direct contact, no other act of throwing or projection can amount to battery.  This comment, however, was illustrative, not exclusive.  There is no reason to believe that an act analogous to spitting saliva, such as throwing urine, would not also amount to battery.  Defendant does not argue that the throwing of urine, or, for that matter, even water, under the circum­stances is not sufficiently insulting or provoking 

behav­ior.

Finally, defendant contends the court erred in allow­ing, over objection, the testimony of Lieutenant Johansen that immediately following the incident defendant threatened to throw urine or excrement at any officer who walked by his cell if Johansen "stripped out" his cell.  Defendant contends Johansen's testimony was inadmissible as (1) hearsay and (2) evidence of other acts admitted solely for the purpose of showing his propen­sity to commit the crime for which he was now on trial.

Initially, we conclude Johansen's testimony concerning defendant's statements was not hearsay.  Johansen merely testi­fied as to what defendant said contemporaneous to the "strip out" of his cell.  Defendant's statement was not offered to prove the truth of the matter asserted.  See  
M. Graham, Cleary & Graham's Hand­book of Illinois Evidence §801.1, at 632 (6th ed. 1994).  Even if it was hearsay, it would have been admissible as the admission of a party opponent.  M. Graham, Cleary & Graham's Handbook of Illinois Evidence §802.1, at 669 (6th ed. 1994).  Fur­ther­more, al­though defendant's state­ment had some preju­di­cial effect, it also had some probative value as it tended to show that, in fact, defen­dant threw urine and not water at Montgomery and Dieterle, which was a material issue at trial.  Considering the overwhelm­ing evidence that defen­dant committed aggravated battery by at least throwing water at Montgomery and Dieterle in an insulting and provoking manner, any error in the admis­sion of Johansen's testi­mo­ny did not amount to revers­ible error.

For the reasons stated, we affirm.

Affirmed.

STEIGMANN, P.J., and McCULLOUGH, J., concur.